1 DAVID H. KRAMER, State Bar No. 168452
JACOB T. VELTMAN, State Bar No. 247597
2 SARA E. ROWE, State Bar No. 295353
WILSON SONSINI GOODRICH & ROSATI
3 Professional Corporation
650 Page Mill Road
4 Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
5 Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
6
7 *Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONG FI, INC., *et al.*, | Case No. 3:14-cv-05080-SC |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES** |
| v. | |
| GOOGLE INC. and YOUTUBE, LLC, | Date: February 20, 2015 |
| Defendants. | Time: 10:00 a.m. |
| | Crtrm: 1 |
| | Before: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

STATEMENT OF ISSUES.....................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

    INTRODUCTION................................................................................................1

    BACKGROUND...................................................................................................3

        A.    Defendants Google Inc. and YouTube, LLC ............................................3

        B.    The YouTube Terms of Service Agreement ..............................................3

        C.    The "LuvYa" Video ....................................................................................4

        D.    Procedural History......................................................................................5

ARGUMENT .........................................................................................................................6

    I.    LEGAL STANDARD .............................................................................6

    II.    PLAINTIFFS' CLAIMS RELATING TO THE RELOCATION OF THE VIDEO FAIL AS A MATTER OF LAW ..................................................7

        A.    Plaintiffs' Claims Are Barred by the Communications Decency Act........7

        B.    Plaintiffs' Claims Related to the Relocation of the Video Fail Because YouTube Was Expressly Authorized by the Agreement to Relocate the Video ....................................................................................10

    III.    PLAINTIFFS' CLAIMS RELATING TO YOUTUBE'S NOTICE FAIL AS A MATTER OF LAW .......................................................................13

    IV.    PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE FAIL FOR SEVERAL ADDITIONAL REASONS.............................................15

    V.    PLAINTIFFS' CPPA CLAIMS SHOULD BE DISMISSED BECAUSE CALIFORNIA LAW GOVERNS THIS DISPUTE ...............................17

CONCLUSION ...................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316 (11th Cir. 2006) ...................................8

*Armstrong v. Accrediting Council for Continuing Educ. & Training*,
980 F. Supp. 53 (D.D.C. 1997), *aff'd*, 168 F.3d 1362 (D.C. Cir. 1999) ............................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................7, 15

*Atl. Marine Constr. Co. v. U.S. Distr. Ct.*, 134 S. Ct. 568 (2013).................................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................7

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980 (10th Cir. 2000) ...................9

*Black v. Google Inc.*, 457 F. App'x 622 (9th Cir. 2011)...............................................8

*Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002) ...................................................8

*Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013).......................18

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)...............................8

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.* 2 Cal. 4th 342 (1992)................10, 12

*Damabeh v. 7-Eleven, Inc.*, No. 12-cv-1739,
2013 U.S. Dist. LEXIS 66565 (N.D. Cal. May 8, 2013) .....................................16

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995)..........................15, 17

*Dena' Nena' Henash, Inc. v. Oracle Corp.*, No. 07-cv-633, 2007 U.S. Dist. LEXIS
39611 (N.D. Cal. Oct. 31, 2007) ...............................................................17

*e360Insight LLC v. Comcast Corp*, 546 F. Supp. 2d 605 (N.D. Ill. 2008) ..........................8, 9

*Falkowski v. Imation Corp.*, 132 Cal. App. 4th 499 (2005)..........................................10

*Forsher v. Bugliosi*, 26 Cal. 3d 792 (1980)...........................................................15

*Gavra v. Google Inc.*, No. 12-cv-6547, 2013 U.S. Dist. LEXIS 100127
(N.D. Cal. July 17, 2013) .....................................................................8

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) ...................................................12

*Hamilton v. Dixon*, 168 Cal. App. 3d 1004 (1985) .................................................10, 13

*Holomaxx Techs. Corp. v. Microsoft Corp.*, 783 F. Supp. 2d 1097 (N.D. Cal. 2011)...............8

*Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924, 2011 U.S. Dist.
LEXIS 94316 (N.D. Cal. Aug. 23, 2011)...................................................8, 9

*In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054 (N.D. Cal. 2003)............................4

-ii-

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2013) ..................................8

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)..............................13, 15, 16

*Langdon v. Google Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007) ........................................9, 10, 14, 15

*Leramo v. Premier Anesthesia Med. Grp.*, No. 09-cv-2083, 2010 U.S. Dist. LEXIS 79418 (E.D. Cal. Aug. 6, 2010) ..................................................................................15

*Lewis v. YouTube, LLC*, Santa Clara Cnty. Sup. Ct., Case No. 1-13-cv-256300 (February 25, 2014)..................................................................................11, 14

*Marschall v. Caine & Weiner Co.*, No. 11-cv-00397, 2011 U.S. Dist. LEXIS 67322 (C.D. Cal. June 23, 2011) ..............................................................................15

*Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. 2000) ...........................18

*Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344 (1998)................................................................14

*Mullins v. Thieriot*, 19 Cal. App. 3d 302 (1971) ..........................................................................15

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) ......................8

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ........................................................................4

*Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992) ..............................................................................7

*PNY Techs., Inc. v. SanDisk Corp.*, No. 11-cv-4689, 2012 U.S. Dist. LEXIS 55965 (N.D. Cal. Apr. 20, 2012)..........................................................................16, 17

*Schering Corp. v. First DataBank, Inc.*, No. 07-cv-1142, 2007 U.S. Dist. LEXIS 29433 (N.D. Cal. Apr. 10, 2007)........................................................................14

*Schmier v. U.S. Ct. of Appeals*, 279 F.3d 817 (9th Cir. 2002) ........................................................7

*Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal. App. 4th 1215 (2006)..........................................................................15

*United States v. United Foods*, 533 U.S. 405 (2001) ....................................................................13

*Universal Grading Serv. v. eBay, Inc.*, No. 09-cv-2755, 2011 U.S. Dist. LEXIS 25193 (N.D. Cal. Mar. 8, 2011) ..........................................................................16, 17

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d. Cir. 2012)......................................................3

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996) ..........................16

*Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-cv-0807, 2007 U.S. Dist. LEXIS 97332 (W.D. Wash. Aug. 28, 2007), *aff'd* 568 F.3d 1169 (9th Cir. 2009) ....................................10

*Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ..................................................11

**STATUTES**

47 U.S.C. § 230(c)............................................................................................................ *passim*

D.C. Consumer Protection Procedure Act, D.C. Code § 28-3901 *et seq.* ............................... *passim*

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 6

DEFENDANTS' MOTION TO DISMISS FAC
CASE NO. 3:14-CV-05080-SC

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 20, 2015, at ten o'clock in the morning, before the

Honorable Samuel Conti of the United States District Court for the Northern District of

California, Courtroom 1 – 17th Floor, 450 Golden Gate Avenue, San Francisco, Defendants

Google Inc. and YouTube, LLC (collectively, "YouTube") will, and hereby do, move this Court

pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiffs' First

Amended Complaint ("FAC") with prejudice.

The motion is based upon this Notice of Motion; the Memorandum of Points and

Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings,

records, and papers on file in this action; oral argument of counsel; and any other matters

properly before the Court.

**STATEMENT OF ISSUES**

1.       Does Plaintiff's First Amended Complaint state a claim for which relief can be

granted?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This lawsuit arises from the ordinary, day-to-day operations of Defendant YouTube,

LLC, a wholly-owned subsidiary of Defendant Google Inc.[1]  YouTube determined that

automated means were being used to inflate the view count associated with a video that Plaintiffs

uploaded to YouTube's online video service.[2]  This sort of view-count fraud is commonly

---

[1]  Although it is not clear why Plaintiffs believe Google is properly named as a defendant in the case, they appear to be invoking some alter-ego theory based on Google's status as YouTube's parent company.  Defendants therefore refer herein to YouTube, LLC and Google Inc. collectively as "YouTube."

[2]  YouTube's determination that the view count associated with the "LuvYa" video had been artificially inflated is discussed in the FAC as well as in the D.C. Court's transfer order, and may therefore be considered on a motion to dismiss.  *See* FAC ¶ 37 (the video was removed because YouTube determined that "the view count had been manipulated by use of robotic means in violation of the YouTube[] Terms of Service"); Dkt. # 19 at 3-4 (Song fi was "informed by YouTube that the video had been removed because of YouTube's belief that Song fi or its agents had attempted to manipulate the video's view count").

employed to make videos appear more popular to users than they actually are. The YouTube Terms of Service Agreement (the "Agreement") expressly prohibits view-count inflation, and authorizes YouTube to remove videos from the service when it determines in its sole discretion that a violation has occurred. YouTube exercised its contractual rights with respect to Plaintiffs' "LuvYa" video, removing it from its original location, and displaying it with a fresh view count elsewhere on the service. YouTube also posted a message at the original location, informing users of the Terms of Service violation. Plaintiffs filed suit, claiming they had the right to have their video appear where they wanted it on YouTube, and claiming they were harmed by YouTube's actions.

This case comes to the Court with considerable history. Plaintiff Song fi originally filed suit in the U.S. District Court for the District of Columbia and simultaneously moved for a temporary restraining order requiring Google to restore the "LuvYa" video to its original location on the YouTube service. Judge Rosemary Collyer denied the motion on the grounds that the action should have been filed in this Court pursuant to the forum-selection clause contained in YouTube's Terms of Service Agreement. At the request of Song fi's counsel, Judge Collyer allowed Song fi to submit supplemental briefing on the issue of venue before transferring the action. Song fi then amended its complaint to add three additional, closely-related plaintiffs hoping their presence would defeat transfer. Judge Collyer rejected that effort, holding the new plaintiffs were equally bound by the Agreement's forum-selection clause. Judge Collyer also held that the Terms of Service Agreement was neither substantively nor procedurally unconscionable. Accordingly, she ordered the action transferred to this Court.

Now in the correct jurisdiction, Plaintiffs' claims remain substantively flawed and should be dismissed. Plaintiffs' causes of action addressed to the relocation of the video on the YouTube service (breach of contract, tortious interference) fail as a matter of law in light of 47 U.S.C. § 230(c)(2), which immunizes online services from liability for actions taken to remove or restrict access to materials on their services that they or their users deem objectionable. That is precisely what YouTube did here, removing the objectionable, artificially-inflated view count by relocating Plaintiffs' video.

Plaintiffs' claims are likewise barred by the Agreement that governs their use of YouTube. The Agreement grants YouTube control over its service, and Judge Collyer has already ruled the Agreement is enforceable against these plaintiffs.

Plaintiffs have also asserted claims (libel, tortious interference, D.C. Consumer Protection Procedures Act ("CPPA")) based upon the notice YouTube displayed to users that stated that Plaintiffs' video had been removed from its original location for a Terms of Service violation. The libel claim fails because the notice in question was accurate, not defamatory. The tortious interference claim fails for that same reason and because Plaintiffs have not properly alleged YouTube's knowledge of a specific economic expectancy or conduct by YouTube designed to disrupt that expectancy. And the CPPA claim is improperly pled because the Terms of Service dictate that California law controls this matter.

For all these reasons, Plaintiffs' complaint should be dismissed with prejudice.

## BACKGROUND

### A. Defendants Google Inc. and YouTube, LLC

Defendant Google is headquartered in Santa Clara County, California. FAC ¶ 6. Since 2006, YouTube has been a wholly-owned subsidiary of Google. *Id.* ¶ 7. YouTube operates the popular video-sharing website located at <www.youtube.com>, where users can share and watch personal videos. With limited exception, the YouTube service is free; users are not charged to upload or view videos. Time Magazine named the YouTube service "Invention of the Year" for 2006. *See* Associated Press, "YouTube Wins Time's 'Invention of the Year'" (Nov. 6, 2006), available at http://www.nbcnews.com/id/15592918. Since then, YouTube has only become more popular. As of 2010, users watched videos on YouTube more than one billion times a day, and uploaded more than 24 hours of new video to the site every minute (*see Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 28 (2d. Cir. 2012)), and those figures continue to grow.

### B. The YouTube Terms of Service Agreement

The relationship between YouTube and its users is governed by the Terms of Service Agreement posted on the YouTube website at www.youtube.com/terms, including the Community Guidelines, which are expressly incorporated into the Agreement. *See* FAC ¶ 15

("Content is uploaded subject to the specified Terms of Service . . . and Community Guidelines . . . found on the YouTube website.").[3] Before a user can upload a video to the YouTube service, the user must create an account with YouTube and assent to the Agreement during the account-creation process. *Id.* ("Consumers must agree to the Terms and Guidelines as a condition of using the YouTube website."). The Agreement vests YouTube with significant control and discretion over the operating of the service:

1. ***The Agreement confers on YouTube the right to determine the content that is made accessible through its service.*** Ex. A ¶¶ 4.J, 6.F & 7.B. YouTube expressly reserves the right "to remove Content without prior notice" and "to discontinue any aspect of the Service at any time." Ex. A ¶¶ 4.J & 6.F. "Content" is defined expansively to include "the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service." *Id.* ¶ 2.A.

2. ***The Agreement forbids view-count fraud.*** Ex. A ¶ 4.H. YouTube prohibits users from artificially inflating the view counts associated with their videos through the use of automated systems. The Agreement states: "You agree not to use or launch any automated system, including without limitation, 'robots,' 'spiders,' or 'offline readers,' that access the Service in a manner that sends more request messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser." Ex. A ¶ 4.H.

3. ***The Agreement gives YouTube sole discretion to determine Terms of Service violations, including to identify content that may violate the Agreement and to take appropriate action.*** Ex. A ¶ 7.B. Paragraph 7.B states: "YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service." *Id.*

**C. The "LuvYa" Video**

On February 14, 2014, Plaintiff Song fi, Inc. "produced and uploaded onto the YouTube website a video titled "LuvYa LuvYa LuvYa." FAC ¶ 31. In April 2014, YouTube determined that the view count associated with the "LuvYa" video had been artificially inflated in violation of Section 4.H of the Agreement through the use of automated "bots" or similar automated

_____

[3] The YouTube Terms of Service Agreement is relied upon and incorporated by reference in the FAC. *See* FAC ¶¶ 15, 26-27, 35, 37, 39, 42, 55, 61. Accordingly it may be considered on a motion to dismiss. *See, e.g., In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). A true and correct copy of the Agreement was attached to and authenticated by the Declaration of Katie

(continued...)

means. *Id.* ¶ 37. In response, YouTube removed the video from its original location and reposted it to a new location (*i.e.,* web address) on the service so that the video could be available to the public but would no longer be associated with the suspect view count. *Id.* ¶ 34; *see also* Transfer Order (Dkt. # 19) at 4 n.3 ("After removing the video, YouTube re-uploaded the video to a new location."). YouTube also posted a message at the original location of the video explaining that the video had been removed from that location "Because Its Content Violated YouTube's Terms of Service." *Id.*

### D. Procedural History

On July 28, 2014, Song fi filed this action against Google and YouTube. *See* Dkt. # 1. The original complaint asserted claims for Breach of Express Contract, Libel, and Tortious Interference with Business Relationships based on YouTube's relocation of the "LuvYa" video and the message explaining the removal from its original location. In addition to filing its complaint, Song fi moved for a temporary restraining order requiring YouTube to restore the "LuvYa" video to its original location. *See* Dkt. # 2.

On August 1, 2014, Judge Collyer denied Song fi's Motion for Temporary Restraining Order, concluding that per the Agreement, the entire action, both contract and tort claims, should have been filed in this Court. Although Judge Collyer indicated that she was prepared to transfer this action immediately, at the request of Song fi's counsel she permitted the parties to submit further briefing on the issue of transfer.

In an effort to avoid transfer, Song fi amended its complaint to assert the same claims on behalf of three additional, related parties — Song fi's president (Joseph Brotherton), Mr. Brotherton's minor son ("N.G.B."), and a related corporation (Rasta Rock, Inc.). *See* Dkt. # 13. The FAC continued to assert claims for Breach of Express Contract, Breach of Implied-in-Fact Contract, and Tortious Interference with Business Relationships based on YouTube's relocation of the "LuvYa" video. It also asserted claims for violation of the D.C. Consumer Protection

_____

(...continued from previous page)

Hushion filed on July 31, 2013. *See* Dkt. # 8-4. For the Court's convenience, a copy of the Agreement is attached hereto as Exhibit A.

Procedure Act, Libel, and Tortious Interference with Business Relationships based on the explanatory message YouTube posted. *Id.* ¶¶ 54-79.

On October 29, 2014, Judge Collyer granted YouTube's request to transfer this action to the Northern District of California. *See* Dkt. # 19. She found that the Terms of Service Agreement, including the forum-selection clause it contains, are binding on all of the Plaintiffs, not just Song fi, because

> all Plaintiffs are closely related. Rasta Rock and Song fi share an office and have the same registered agent. All music created by the Rasta Rock Opera is owned and managed by Song fi. Joseph Brotherton is the President of Song fi and his son, N.G.B., starred in the LuvYa video along with Rasta Rock. . . . [A]ll of the injuries complained of in this case stem from the fact that YouTube removed the LuvYa video and replaced it with an allegedly defamatory message . . . Thus, all claims here are closely related to the contract at issue.

Dkt. # 19 at 8-9 (citations omitted).

Judge Collyer further rejected Plaintiffs' argument that the Agreement was unconscionable. She found that "there was no procedural unconscionability [because] the conditions for use of YouTube's service were not obscured or hidden, Plaintiffs had a clear opportunity to understand the terms, and they did not lack a meaningful choice." Dkt. # 19 at 12. "Plaintiffs could have publicized the LuvYa video by putting it on various other file-sharing websites or an independent website" if they found the Agreement unacceptable. *Id.* Judge Collyer similarly rejected the Plaintiffs' claim of substantive unconscionability, finding that standard contractual terms such as a limitation-of-liability provision and forum-selection clause were not "'so outrageously unfair as to shock the judicial conscience.'" *Id.* at 13. Accordingly, Judge Collyer ordered the action to be transferred to this Court and denied YouTube's then-pending Motion to Dismiss as moot.

## ARGUMENT

## I.   LEGAL STANDARD

Under Rule 12(b)(6), a complaint should be dismissed when it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(B)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

1  requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2  (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

3  statements, do not suffice." *Iqbal*, 556 U.S. at 678. While the court accepts as true all material

4  allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted

5  inferences, nor should it accept legal conclusions as true merely because they are cast in the form

6  of factual allegations. *Schmier v. U.S. Ct. of Appeals*, 279 F.3d 817, 820 (9th Cir. 2002). Thus,

7  even though the Court is to construe the complaint liberally, such construction "may not supply

8  essential elements of the claim that were not initially pled." *Pena v. Gardner*, 976 F.2d 469, 471

9  (9th Cir. 1992).

10  **II.  PLAINTIFFS' CLAIMS RELATING TO THE RELOCATION OF THE VIDEO**
    **FAIL AS A MATTER OF LAW**

11

12  Plaintiffs assert three causes of action based on YouTube's relocation of the "LuvYa"

13  video: (1) Breach of Express Contract; (2) Breach of Implied-in-Fact Contract; and (3) Tortious

14  Interference with Business Relationships. None states a claim.

15  **A.  Plaintiffs' Claims Are Barred by the Communications Decency Act**

16  The Court need not reach the merits of Plaintiffs' claims relating to YouTube's relocation

17  of their video because YouTube is statutorily immune from liability. Section 230(c)(2)(A) of the

18  Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, immunizes an interactive

19  service provider for actions taken to restrict the availability of material that the service or its

20  users find objectionable. Here, YouTube removed and relocated Plaintiffs' "LuvYa" video in

21  order to ensure that the video's inflated view count was no longer displayed to users. That is

22  precisely the sort of behavior by an online service that Congress intended to shield from liability.

23  Section 230(c)(2) states:

24  > No provider or user of an interactive computer service shall be held liable on
   > account of — (A) any action voluntarily taken in good faith to restrict access to or

25  > availability of material *that the provider or user considers to be* obscene, lewd,
   > lascivious, filthy, excessively violent, harassing, or *otherwise objectionable*,

26  > whether or not such material is constitutionally protected . . . .

27  47 U.S.C. 230(c)(2)(A) (emphases added). This provision "provides a robust immunity."

28  *Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924, 2011 U.S. Dist. LEXIS 94316, at

*2 (N.D. Cal. Aug. 23, 2011). It was enacted "to protect providers who take actions to prevent access to objectionable content." *e360Insight LLC v. Comcast Corp*, 546 F. Supp. 2d 605, 607 (N.D. Ill. 2008); *see also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322 n.3 (11th Cir. 2006) ("section 230(c)(2) is clearly inconsistent with state law that makes interactive service providers liable based on their efforts to screen content."). "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).[4]

There is no question that YouTube is an "interactive computer service" under the CDA because it hosts videos uploaded by third-party users. *See, e.g.*, *Gavra v. Google Inc.*, No. 12-cv-6547, 2013 U.S. Dist. LEXIS 100127, at *8 (N.D. Cal. July 17, 2013) (CDA barred claims based on videos hosted by YouTube); *Black v. Google Inc.*, 457 F. App'x 622, 622 (9th Cir. 2011) (affirming dismissal of claims against Google pursuant to CDA); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (affirming dismissal of claims against website operator pursuant to CDA).

As an interactive computer service, YouTube is entitled to CDA protection for any action taken to limit access to "objectionable" content. Artificially-inflated view counts are plainly objectionable. Indeed, the practice of inflating view counts is expressly proscribed by the Agreement. There is good reason for that — inflated view counts dupe other users into thinking videos are more popular than they actually are, resulting in a diminished user experience. YouTube removed Plaintiffs' video from its original location and relocated it to a new location on the service to remove the objectionable content — the inflated view count — that it identified.

---

[4] It is well established that CDA immunity should be resolved at the earliest possible stage of a case, including on a motion to dismiss. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (the immunity provided by § 230(c) "is an immunity from suit rather than a mere defense to liability [and] is effectively lost if a case is erroneously permitted to go to trial"; the immunity should be resolved "at the earliest possible stage of the case"); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2013) ("Given the role that the CDA plays in an open and robust internet . . . determinations of immunity under the CDA should be resolved at an earlier stage of litigation."); *Langdon v. Google Inc.*, 474 F. Supp. 2d 622, 631 (D. Del. 2007) (dismissing claims brought against Google pursuant to Section 230(c)(2)); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097,1103 (N.D. Cal. 2011) (rejecting argument that 230(c)(2) immunity "should not even be considered on a Rule 12(b)(6) motion").

Plaintiffs allege no alternative explanation for YouTube's actions.[5]  They nevertheless seek to hold YouTube liable for those actions.  This case thus involves precisely the kind of "editorial and self-regulatory functions" that Congress intended to immunize.  *See Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) ("By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect" in enacting Section 230(c)).

e360, LLC v. Comcast Corp. is instructive.  546 F. Supp. 2d 605 (N.D. Ill. 2008).  There, the court invoked Section 230(c)(2) to dismiss claims based on the defendant's refusal to deliver email messages that the plaintiff sent to its network because the defendant deemed them to be undesirable "spam."  The court recognized that the defendant found the plaintiff's emails "objectionable" within the meaning of the statute, and held that "[t]o force a provider like Comcast to litigate the question of whether what it blocked was or was not spam would render § 230(c)(2) nearly meaningless."  *Id.* at 608-09; *see also Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (applying Section 230(c)(2) to dismiss claim against Google for refusing to display advertisements from plaintiff that Google believed violated a prohibition on attack ads); *Zango, Inc. v. Kaspersky Lab, Inc.*, No. 07-cv-0807, 2007 U.S. Dist. LEXIS 97332, at *11-12 (W.D. Wash. Aug. 28, 2007), *aff'd* 568 F.3d 1169 (9th Cir. 2009) (applying Section 230(c)(2) to dismiss claim based on blocking of undesirable adware or malware computer program).

---

[5] While Plaintiffs allege conclusorily that they did not use artificial means to boost the "LuvYa" video's view count, they admit that they hired an agent to promote the video and that they cannot know whether that agent inflated the video's view count.  But whether Plaintiffs or their agent actually engaged in view-count fraud is immaterial for purposes of applying the CDA.  What matters here is whether YouTube subjectively considered the video objectionable because of suspected view-count manipulation.  *See, e.g., Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-cv-04924, 2011 U.S. Dist. LEXIS 94316, at *6-7 (N.D. Cal. Aug. 23, 2011) (explaining that "immunity is focused upon the provider's subjective intent").  Plaintiffs certainly do not—and could not—allege that YouTube did not *subjectively* believe that the "LuvYa" video's view count had been improperly inflated.  *See, e.g., e360Insight, LLC v Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (applying § 230(c)(2) immunity where plaintiff failed to plausibly allege that the defendant acted in bad faith in removing the material at issue).

The same result should obtain here. Under Section 230(c)(2), YouTube cannot face liability for the actions it took to remove the objectionable view count associated with Plaintiffs' video.

**B.    Plaintiffs' Claims Related to the Relocation of the Video Fail Because YouTube Was Expressly Authorized by the Agreement to Relocate the Video**

Plaintiffs' claims relating to the relocation of the "LuvYa" video fail for the independent reason that YouTube's conduct was expressly authorized by the Agreement. It is axiomatic that conduct authorized by an agreement cannot give rise to a claim for breach of that agreement. *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.* 2 Cal. 4th 342, 373 (1992).[6] Nor can the exercise of an express contractual right give rise to a claim for breach of an implied-in-fact contract or tortious interference. *See, e.g., Falkowski v. Imation Corp.*, 132 Cal. App. 4th 499, 518 (2005) (noting "the fundamental rule that an implied contract cannot override the terms of an express agreement between the parties"); *Hamilton v. Dixon*, 168 Cal. App. 3d 1004, 1012 (1985) (where lessor was contractually authorized to terminate lease, "[i]t would defy all logic" to impose liability under theory that she interfered with sublease).

*Breach of Contract Claim.* Plaintiffs acknowledge, and the D.C. Court has said, that use of the YouTube service is governed by the YouTube Terms of Service Agreement. FAC ¶ 15. They allege that YouTube violated the Agreement by "remov[ing]" the "LuvYa" video "without cause." *Id.* ¶ 62. They are mistaken.

YouTube is not required to show "cause" prior to removing or relocating content. The Agreement gives YouTube sole discretion to determine the content that it will host on its site. Ex. A ¶¶ 4.J, 6.F & 7.B. YouTube expressly reserves the right "to remove Content without prior notice" and "to discontinue any aspect of the Service at any time." Ex. A ¶¶ 4.J & 6.F. In a case similar to this one, the Santa Clara County Superior Court recently cited the language of

---

[6] Plaintiffs' claims are governed by California law pursuant to the choice-of-law clause contained in the Agreement. Ex. A ¶ 14. Furthermore, even if there were no choice-of-law clause in the Agreement, California law would nonetheless apply because this is an action in diversity. *See Atl. Marine Constr. Co. v. U.S. Distr. Ct.*, 134 S. Ct. 568, 582 (2013) (where an action in diversity is transferred pursuant to a forum-selection clause, the transferee forum's law applies).

Paragraph 4.J as foreclosing a party's demand that YouTube restore a video to a specific location on its service. *See* Order Re: YouTube LLC's Demurrer to the Complaint in *Lewis v. YouTube, LLC*, Santa Clara Cnty. Sup. Ct., Case No. 1-13-cv-256300 (February 25, 2014) (opinion attached hereto as Exhibit B) at *3, 8.

Regardless, Plaintiffs' allegations demonstrate that YouTube did have cause in this case — it determined that Plaintiffs violated the Agreement by manipulating video view counts. *See* FAC ¶ 37 (describing YouTube's letter to Plaintiffs stating that the "LuvYa" video  was removed "because the view count had been manipulated by use of robotic means" in violation of the Agreement); ¶ 40 (discussing decision by YouTube following Plaintiffs' submission of appeal form that view count has impermissibly been enhanced "by automated means"). Even Plaintiffs admit that their breach of the Agreement would justify outright removal of their video from the service. *See* FAC ¶ 60 (alleging that YouTube agreed to uploading of "LuvYa" video "so long as Song fi did not violate the site's Terms of Service.").

The Court need not probe the correctness of YouTube's determination. As the *Lewis* court recognized, the Terms of Service Agreement vests YouTube with sole discretion to decide whether Content violates the Agreement. Thus, YouTube had the right to remove the "LuvYa" video altogether, regardless of whether Plaintiffs actually breached the Agreement. *See Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D. Cal. 2011) ("PayPal could have placed holds on Plaintiffs' accounts in its 'sole discretion' even if Plaintiffs never engaged in restricted activities.").

Instead of removing the video from the service altogether, YouTube moved it to a different location where the view count was started anew. Its decision to relocate the video was well within the rights expressly granted to it under the Agreement. *See* Ex. A ¶¶ 4.J, 6.F & 7.B. YouTube's exercise of those rights cannot support a claim for breach of contract.[7]

---

[7] Separately, Plaintiffs here cannot recover damages based on the relocation of the video, even if they could state a claim. The Agreement includes a limitation-of-liability clause that precludes any award of monetary damages based, *inter alia*, on the removal or relocation of a video. *See* Ex. A ¶ 10. The D.C. Court has already rejected Plaintiffs' contention that this provision is unenforceable. *See* Dkt. # 19 at 13 ("courts routinely enforce such terms").

1       *Breach of Implied Covenant Claim*.  Plaintiffs allege that YouTube's relocation of the

2   video also constitutes a breach of the implied covenant of good faith and fair dealing.  FAC

3   ¶¶ 65-66.  However, the implied covenant cannot deprive YouTube of rights expressly granted

4   by the written terms of the Agreement.

5       "It is universally recognized the scope of conduct prohibited by the covenant of good

6   faith is circumscribed by the purposes and express terms of the contract."  *Carma Developers*, 2

7   Cal. 4th at 373.  The covenant "cannot impose substantive duties or limits on the contracting

8   parties beyond those incorporated in the specific terms of their agreement."  *Guz v. Bechtel Nat'l,*

9   *Inc.,* 24 Cal. 4th 317, 349-350 (2000) (implied covenant could not impose liability on employer

10  for failing to follow its termination policies where employment agreement was at-will).  That is

11  because the implied covenant of good faith "exists merely to prevent one contracting party from

12  unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*"

13  and, as such, "cannot be endowed with an existence independent of its contractual

14  underpinnings."  *Id.* (emphasis in original) (internal quotation marks and citation omitted).  It

15  follows that the implied covenant of good faith cannot deprive a party of rights expressly granted

16  by the written terms of the contract.  As the California Supreme Court has explained:

17          We are aware of no reported case in which a court has held the covenant of good
            faith may be read to prohibit a party from doing that which is expressly permitted

18          by an agreement.  On the contrary, as a general matter, implied terms should never
            be read to vary express terms . . .  As to acts and conduct authorized by the express

19          provisions of the contract, no covenant of good faith and fair dealing can be
            implied which forbids such acts and conduct.  And if defendants were given the

20          right to do what they did by the express provisions of the contract there can be no
            breach.

21

22  *Carma Developers*, 2 Cal. 4th at 374 (internal quotation marks and citation omitted).

23      Plaintiffs' claim that YouTube breached a covenant of good faith implied in the

24  Agreement thus fails as a matter of law because the Agreement expressly authorizes YouTube to

25  remove content from the service as it sees fit — including in instances like this, where Plaintiffs

26  violated the terms.  Ex. A ¶ 6(F).  YouTube exercised that right based on its determination that

27  Plaintiffs violated the Agreement by relocating the video without the display of historical view

28

1  counts.  *See* FAC ¶¶ 37, 40.  As *Carma* and its progeny make clear, YouTube's exercise of

2  express contractual rights cannot support a claim for breach of the implied covenant.

3          *Tortious Interference Claim.*  Plaintiffs also allege that YouTube's relocation of the video

4  constitutes tortious interference with business relationships.  FAC ¶¶ 77-78.  That claim also fails

5  in light of YouTube's right to remove or relocate content under the express terms of the

6  Agreement.  Contractually-authorized conduct is not actionable as "interference."  *See Hamilton*,

7  168 Cal. App. 3d at 1012 (where lessor was contractually authorized to terminate lease, "[i]t

8  would defy all logic" to impose liability under theory that she interfered with sublease); *see also*

9  *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1158 (2003) (conduct must be

10  independently wrongful to support interference claim).

11          In sum, Plaintiffs have not stated and cannot state a claim arising from the removal and

12  relocation of their video on the YouTube service.[8]

13  **III.     PLAINTIFFS' CLAIMS RELATING TO YOUTUBE'S NOTICE FAIL AS A
             MATTER OF LAW**

14

15          Plaintiffs assert three causes of action directed to the notice posted by Google that the

16  "LuvYa" video had been removed "because its content violated YouTube's Terms of Service":

17  (1) Libel; (2) Tortious Interference with Business Relationships; and (3) Violation of the CPPA.

18  Each of these claims should be dismissed because the notice in question was accurate.  *See, e.g.,*

19  *Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344 (1998) ("'An essential element of libel . . . is that

20  the publication in question must contain a false statement of *fact*.'") (citation omitted); *Schering*

21  *Corp. v. First DataBank, Inc.*, No. 07-cv-1142, 2007 U.S. Dist. LEXIS 29433, at *25 (N.D. Cal.

22

23  _____

24          [8] As YouTube explained in opposing Plaintiffs' motion for a restraining order, this case does
    not present a situation in which YouTube contractually promised Plaintiffs that it would display

25  particular content on the YouTube service. Indeed, the Agreement says just the opposite,
    expressly granting YouTube the right to remove any content it wishes. YouTube simply does not

26  wish to speak in a manner that rewards or gives credence to the fraudulently inflated view counts
    on Plaintiffs' video. Under the circumstances, any order compelling YouTube to publish

27  Plaintiffs' video at a particular location or with a particular view count would significantly
    infringe upon YouTube's First Amendment right to control its speech and the speech it

28  disseminates through the service. *See United States v. United Foods*, 533 U.S. 405, 410 (2001)
    ("Just as the First Amendment may prevent the government from prohibiting speech, the

                                                                              (continued...)

Apr. 10, 2007) ("'[t]here is of course no liability for interference with a contract or with a prospective contractual relation on the part of one who merely gives truthful information to another'") (citing Restatement (Second) of Torts Section 772, comment b); D.C. Code § 28-3904(e) - (g) (CPPA claims must be based on a misrepresentation or misleading omission).

YouTube's statement that the "LuvYa" video was relocated because its content violated the Agreement was correct. The Agreement defines "Content" to mean videos hosted by YouTube as well as all other "text" that users "may view on" the Service. Ex. A ¶ 2.A (defining "Content" to include "the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service."); *see also Lewis* at *8 ("'Content' as defined by the Terms of [Service] is not so limited as Plaintiff asserts . . . Plainly, this definition of 'Content' would encompass Plaintiff's 'use [of] the "share" feature of the website to share her videos with other users' that Defendant has determined to violate the Terms of Service."). View counts fall within the definition of "Content" because they constitute text viewable on the YouTube service. The Agreement squarely prohibits artificial means of inflating view counts and vests YouTube with sole discretion to determine when a violation has occurred. Because YouTube determined that automated means had been used to inflate the view count for the "LuvYa" video in violation of the Agreement, YouTube accurately stated that it removed the video because its content violated the Terms of Service.

Plaintiffs' allegation that the notice "was defamatory because it gave the impression to the average viewer that Plaintiffs' video had been pornographic or otherwise beyond the bounds of decency" (FAC ¶ 70) is without factual support and therefore properly ignored. *See, e.g., Iqbal*, 556 U.S. at 663. YouTube never asserted that the video was obscene, or contained violence or animal abuse. The notice instead stated that the "content violated YouTube's Terms of Service." To understand what that meant, a visitor would have to read through the Agreement

(...continued from previous page)

Amendment may prevent the government from compelling individuals to express certain views."); *see also Langdon*, 474 F. Supp. 2d at 632 (dismissing claim seeking order requiring online service to display content against its wishes, as order would violate the First Amendment).

1  and would recognize that YouTube merely determined that the "Content" violated one of the

2  numerous prohibitions in YouTube's governing documents, most of which have nothing to do

3  with violence or obscenity.[9]  Plaintiffs cannot, by spinning inferences from what YouTube

4  actually said, manufacture a claim when YouTube's actual statement was accurate.  *Leramo v.*

5  *Premier Anesthesia Med. Grp.*, No. 09-cv-2083, 2010 U.S. Dist. LEXIS 79418, at *10 (E.D. Cal.

6  Aug. 6, 2010) (Courts are not "'free to infer defamation from what is neither said nor reasonably

7  implied.'") (citing *Mullins v. Thieriot*, 19 Cal. App. 3d 302 (1971)).

8  **IV.    PLAINTIFFS' CLAIMS FOR TORTIOUS INTERFERENCE FAIL FOR
         SEVERAL ADDITIONAL REASONS**
9

10       Like Plaintiffs' libel claim, their claim for tortious interference based on the notice

11  explaining the relocation fails because the posted message was accurate.[10]  But the claim suffers

12  from two additional defects specific to that cause of action.

13       The elements of a tortious interference claim are: "(1) an economic relationship between

14  the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;

15  (2) defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant

16  designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

17  harm proximately caused by the acts of the defendant."  *Korea Supply*, 29 Cal. 4th at 1153.

18

19       [9] That conclusion would also be immediately apparent given that the video itself remains
    available on the YouTube service.  Anyone operating under the misimpression that YouTube
20  deemed the video obscene could simply be pointed to the video at its new location.  Given that,
    Plaintiffs' vague allegations of suffering actual harm from someone's supposed
21  misunderstanding are dubious at best.  For this reason as well, Plaintiffs' libel claim should be
    dismissed.  *See, e.g., Forsher v. Bugliosi*, 26 Cal. 3d 792, 807 (1980) (conclusory allegation that
22  plaintiff had "suffered in an amount, which, as yet, cannot be ascertained and which will be
    proven at trial" did not state claim for libel); *Marschall v. Caine & Weiner Co.*, No. 11-cv-
23  00397, 2011 U.S. Dist. LEXIS 67322, at *10 (C.D. Cal. June 23, 2011) (dismissing defamation
    claim where the plaintiff's allegations were conclusory and the complaint did not "plead specific
24  damages").

25       [10] To state a claim for tortious interference with business relations "the plaintiff must allege
    that the defendant's conduct was 'wrongful' by some measure beyond the fact of the interference
26  itself.'" *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.*, 138 Cal.
    App. 4th 1215, 1220 (2006) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th
27  376, 392-93 (1995)). "In this context, 'an act is independently wrongful if it is unlawful, that is,
    if it is proscribed by some constitutional, statutory, regulatory, common law, or other
28  determinable legal standard.'" *Id.* (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.
    4th 1134, 1159 (2003)).  Defendants' dissemination of accurate information was not unlawful.

Plaintiffs' claim fails because they have not alleged that YouTube (1) knew about Plaintiffs' economic expectancy when it allegedly interfered; or (2) engaged in conduct designed to disrupt Plaintiffs' economic expectancy.

First, a plaintiff asserting tortious interference with business relations must demonstrate interference with a specific, existing relationship that was reasonably likely to result in a contract and the defendant's knowledge of that relationship. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996). Plaintiffs vaguely reference a July 4, 2014 "Star Spangled Banner" event on the roof of a building and support from an unnamed "funder" that they seem to allege was disrupted by YouTube's notice that the "LuvYa" video had been taken down. FAC ¶¶ 49-50. Plaintiffs do not identify any specific relationships that were allegedly disrupted. That, in and of itself, justifies dismissal of the claim.[11] But even if they had identified specific relationships, they do not and cannot allege that YouTube was aware of those specific relationships when it posted the notice in April 2014. *See* FAC ¶ 34. To the contrary, they admit that YouTube was not "on notice of such interference" until nearly a month later in mid-May 2014, when their counsel first wrote to YouTube to complain. *Id.*, ¶ 77-78. By itself, Plaintiffs' admission of YouTube's lack of knowledge of the relationships with which it allegedly interfered requires dismissal of the interference claim. *See, e.g.*, *Universal Grading Serv. v. eBay, Inc.*, No. 09-cv-2755, 2011 U.S. Dist. LEXIS 25193, at *33 (N.D. Cal. Mar. 8, 2011) ("[T]he TAC does not contain factual allegations identifying the existence of any specific economic relationships with identifiable third parties, which defendants knew about and intentionally disrupted through a wrongful act.").

Second, Plaintiffs do not allege that YouTube engaged in intentional acts designed to disrupt the relationships. YouTube could hardly have acted with the intention to disrupt relationships about which it was not aware. Moreover, Plaintiffs admit that YouTube revised the

---

[11] *See Damabeh v. 7-Eleven, Inc.*, No. 12-cv-1739, 2013 U.S. Dist. LEXIS 66565, at *30-31 (N.D. Cal. May 8, 2013) (plaintiffs "must identify with particularity the relationships or opportunities with which Defendant is alleged to have interfered"); *PNY Techs., Inc. v. SanDisk Corp.*, No. 11-cv-4689, 2012 U.S. Dist. LEXIS 55965, at *45-46 (N.D. Cal. Apr. 20, 2012) ("Without any details of the relationships with which SanDisk allegedly interfered, . . . PNY has failed to state a claim").

language of the notice after learning of Plaintiffs' objections to it.  *See* FAC ¶ 73 (discussing revised notice stating "This Video has been Removed.").[12]  Thus, any claim by Plaintiffs that YouTube intentionally sought to interfere with their economic expectancy is implausible and not viable.

## V.  PLAINTIFFS' CPPA CLAIMS SHOULD BE DISMISSED BECAUSE CALIFORNIA LAW GOVERNS THIS DISPUTE

Each Plaintiff brings claims under the D.C. Consumer Protection Procedure Act, D.C. Code § 28-3901 *et seq.*  Those claims fail because the YouTube Terms of Service Agreement is governed by California law:

> These Terms of Service shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles.

Ex. A ¶ 14; *see also* Dkt. # 19.  Courts routinely dismiss consumer protection claims where another state's law governs the agreement between the parties.  *See, e.g.*, *Armstrong v. Accrediting Council for Continuing Educ. & Training*, 980 F. Supp. 53, 59-60, (D.D.C. 1997) (dismissing D.C. CPPA claim in light of choice-of-law clause providing "this note shall be governed by the laws of the jurisdiction where the lender is located" [which was California]), *aff'd*, 168 F.3d 1362 (D.C. Cir. 1999); *Dena' Nena' Henash, Inc. v. Oracle Corp.*, No. 07-cv-633, 2007 U.S. Dist. LEXIS 39611, at *26 (N.D. Cal. Oct. 31, 2007) (dismissing Alaska consumer protection claim due to choice-of-law clause providing that "[t]his agreement is governed by the substantive and procedural laws of California"); *Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1055 (N.D. Cal. 2013) (dismissing UCL claim due to choice-of-law provision providing that mortgage agreement was governed by Florida law); *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. 2000) (dismissing UCL claim due to choice-of-law provision providing that agreement was governed by New Jersey law)  The same result should obtain here.

---

[12] YouTube's revision of the notice was done as courtesy to Plaintiffs and was not an admission that the original notice was improper in any way.

**CONCLUSION**

Plaintiffs' complaint suffers from fundamental and incurable defects. It is apparent not only that the FAC fails to state a claim, but that Plaintiffs have no claim to state. YouTube respectfully requests that the Court dismiss Plaintiffs' FAC with prejudice.

DATED: December 23, 2014

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _/s/ David H. Kramer_
        David H. Kramer

*Attorneys for Defendants*