Erik L. Jackson (SBN 166010)
ejackson@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA  90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

OF COUNSEL:
Ronald F. Wick
rwick@cozen.com
COZEN O'CONNOR
1627 I Street, N.W., Suite 1100
Washington, D.C.  20006
Telephone:  202.912.4874

Edward W. Lyle
ewlyle@west1805.com
LAW OFFICE OF EDWARD W. LYLE
1250 Connecticut Avenue N.W., Suite 200
Washington, D.C.  20036
Telephone:  (202) 333-4280

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SONG FI, et al., ,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC. and YOUTUBE, LLC, ,<br><br>　　　　　Defendants. | Case No.: 3:14-CV-05080-SC<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　March 20, 2015<br>Time:　　10:00 a.m.<br>Ctrm:　　1<br>Judge:　　Hon. Samuel Conti |

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES ...........................................................................................................1
MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1
I. Introduction ................................................................................................................................1
II. Statement of Facts .....................................................................................................................2
   A. Factual Background .......................................................................................................... 2
   B. Procedural Summary......................................................................................................... 4
III. Argument ..................................................................................................................................6
   A. Summary Judgment is Appropriate on Motions Such as This Where Facts Are Not in Dispute and the Only Question Presented is One of Law............................................................ 6
   B. Summary Judgment Is Particularly Appropriate in Libel *Per Se* Cases Such as This One Where Only Questions of Law Are Presented. ............................................................................ 7
   C. Defendants' "Content" Statement is Libelous *Per se.* ....................................................... 8
IV. Conclusion ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alameda Books, Inc. v. City of Los Angeles,*
   631 F.3d 1031 (9th Cir. 2011) .................................................................................................7

*Anthoine v. North. Cent. Counties Consortium,*
   571 F.Supp.2d 1173 (E.D. Cal. 2008) ......................................................................................7

*Clark v. McClurg,*
   215 Cal. 279, 9 P.2d 505 (Cal. 1932) .......................................................................................8

*Condit v. National Enquirer, Inc.,*
   248 F.Supp.2d 945 (E.D. Cal. 2002) ........................................................................................8

*Crowe v. County of San Diego,*
   608 F.3d 406 (9th Cir. 2008) ....................................................................................................7

*Douglas v. Anderson,*
   656 F.2d 528(9th Cir. 1981) .....................................................................................................7

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001) ....................................................................................................8

*Earp v. Ornoski,*
   431 F.3d 1158 (9th Cir. 2005), *cert. denied,* 547 U.S. 1159 (2006) .......................................6

*F.T.C. v. Network Services Depot, Inc.,*
   617 F.3d 1127 (9th Cir. 2010) ..................................................................................................7

*Information Control Corp. v. Genesis One Computer Corp.,*
   611 F.2d 781 (9th Cir. 1999) ....................................................................................................7

*MacLeod v. Tribune Pub. Co.,*
   343 P.2d 36, 52 Cal.2d 536 (Cal. 1959) ...................................................................................8

*Price v. Stoessel,*
   620 F.3d 992 (9th Cir. 2010) ....................................................................................................7

*Scott v. Solano County Health and Social Services Department,*
   459 F.Supp.2d 959 (E.D. Cal. 2006) ........................................................................................7

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*
   927 F.2d 1565 (Fed Cir. 1991) .................................................................................................6

*Slaughter v. Friedman,*
   185 Cal. Reptr. 244, 32 Cal. 3d 149, 649 P.2d 886. .................................................................7

*Taus v. Loftus*,
 54 Cal. Rptr. 3d 775, 40 Cal 4th 683, 151 P.2d 1185 (Cal. 2007)..................................................7

*Tokio Marine & Fire Ins. Co., Ltd. v. United Air Lines, Inc.*,
 933 F. Supp. 1527 (C.D. Cal. 1996) ..................................................................................6

**Statutes**

Civil Code §45 ..............................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................................................6

Federal Rule of Procedure 56 .........................................................................................1, 2, 3, 4

Rule 56(a) of the Federal Rules of Civil Procedure......................................................................6

*Taus v. Loftus*,
 54 Cal. Rptr. 3d 775, 40 Cal 4th 683, 151 P.2d 1185 (Cal. 2007)..................................................7

*Tokio Marine & Fire Ins. Co., Ltd. v. United Air Lines, Inc.*,
 933 F. Supp. 1527 (C.D. Cal. 1996) ..................................................................................6

**Statutes**

Civil Code §45 ..............................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 56(a) .....................................................................................................................6

Federal Rule of Procedure 56 .........................................................................................1, 2, 3, 4

Rule 56(a) of the Federal Rules of Civil Procedure......................................................................6

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 20, 2015, at 10:00 a.m., before the Honorable Samuel Conti of the United States District Court for the Northern District of California, Courtroom 1, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Song fi, Inc., Rasta Rock, Inc., Joseph Brotherton, and N.G.B. will, and hereby do, move this Court pursuant to Federal Rule of Procedure 56 for an order granting partial summary judgment to Plaintiffs on Count IV (Libel) of their First Amended Complaint ("FAC").

This motion ("Motion") is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof; the Declaration of Joseph N. Brotherton filed concurrently therewith; the proposed Order filed concurrently herewith; the pleadings, records and papers on file in this action; oral argument of counsel; and any other matters properly before this Court.

## STATEMENT OF ISSUES

1. Does Defendants' statement that "This video has been removed because its content violated the YouTube Terms of Service" constitute libel *per se*?

2. Are Defendants entitled to judgment as a matter of law on that count?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

This case is fundamentally about the arrogance and wrongdoing of Defendants Google and YouTube and their blatant disregard for the harm they have intentionally inflicted upon Plaintiffs.

While Plaintiffs have set forth multiple counts in their First Amended Complaint, this motion for summary judgment focuses exclusively on Defendants' intentionally defaming Plaintiffs, including a five-year-old boy, and causing Plaintiffs serious financial harm as well as injury to reputation and well-being. Defendants' action constitutes libel *per se* as a matter of California law, and summary judgment is appropriate on the liability phase of the libel count at this time.

1

## II. Statement of Facts

### A. Factual Background

On February 14, 2014, Plaintiff Song fi, Inc. ("Song fi"), a small producer and distributor of videos and music in the Washington D.C. area, uploaded a music video titled "Luv ya Luv ya Luv ya" ("Luv ya") onto the YouTube website. Declaration of Joseph N. Brotherton in Support of Plaintiffs' Motion for Partial Summary Judgment ("Brotherton Dec.") at ¶ 2. Defendants permit the uploading of videos onto the YouTube platform subject to certain restrictions found in the YouTube Terms of Service and Community Guidelines. Brotherton Dec. ¶ 2 & Exh. A.

The "Luv ya" music video did not come close to violating any of YouTube's content restrictions. Brotherton Dec. ¶ 3. "Luv ya" was a video about a five-year-old boy and girl who dress up and go to a restaurant on Valentine's Day. *Id.* As the kids have lunch, they are serenaded by a trumpet player and guitarist. *Id.* The five-year-old boy in the "Luv ya" music video is Plaintiff N.G.B. *Id.* ¶ 4. The trumpeter in the video is Plaintiff Joseph N. Brotherton, N.G.B.'s father. *Id.* Playing in the background is a live performance of the "Luv ya" musical score from some of the other musicians of Plaintiff Rasta Rock, Inc., d/b/a "The Rasta Rock Opera." *Id.*

After the posting of "Luv ya" on YouTube, the link to the video was distributed through social networks and e-mail chains worldwide as part of a major promotion on Facebook, where the Rasta Rock Opera has over 200,000 followers. Brotherton Dec. ¶ 5. From February 14 through April 18, 2014, the number of views of "Luv ya" rose to more than 23,000, and Plaintiffs were using the success and acclaim of "Luv ya" as a public relations asset to promote the release of an upcoming album and to raise capital from sponsors for an extensive national concert tour. *Id.*

While "Luv ya" seemed to be progressing nicely from Plaintiffs' viewpoint, Defendants had a different opinion. On April 18, 2014, with no notice to Plaintiffs, Defendants removed "Luv ya" from the YouTube link that had been distributed in the Facebook promotional campaign and through email chains and posted in its place a statement that read: "This video has been removed because its content violated YouTube's Terms of Service." Brotherton Dec. ¶ 6 & Exh. B (the "Content Statement"). In addition to the "Luv ya" video itself, Defendants also removed all of the more than 23,000 views, likes, and comments about "Luv ya" ("Ancillary Features"). *Id.* ¶ 6.

2

Defendants' Content Statement included a link directly to YouTube's Terms of Service so viewers could learn right away the type of Content to which Defendants were referring. Brotherton Dec. ¶ 6. In Section 7B of the Terms of Service, a viewer would see that prohibited "Content" includes, among other things, pornography and obscenity:

> 7B. YouTube reserves the right to decide whether Content violates these Terms of Service for reasons other than copyright infringement, such as, but not limited to, *pornography, obscenity,* or excessive length. YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service.

*Id.* Exh. A (emphasis added).

The viewer would find even more examples of what Defendants meant by a Content violation in the YouTube "Community Guidelines." Those Guidelines state the following about prohibited content:

> YouTube is not for pornography or sexually explicit content. If this describes your video, even if it's a video of yourself, don't post it on YouTube. Also, please be advised that we work closely with law enforcement and we report child exploitation. Please read our Safety Center and stay safe on YouTube.
>
> Don't post videos showing bad stuff like animal abuse, drug abuse, under-age drinking and smoking, or bomb-making.
>
> Graphic or gratuitous violence is not allowed. If your video shows someone being physically hurt, attacked or humiliated, don't post it.
>
> YouTube is not a shock site. Don't post gross-out videos of accidents, dead bodies or similar things intended to shock or disgust.
>
> Things like predatory behavior, stalking, threats, harassment, intimidation, invading privacy, revealing other people's personal information, and inciting others to commit violent acts or to violate the Terms of Use are taken very seriously. Anyone caught doing these things may be permanently banned from YouTube.

Brotherton Dec. Exh. A.

When Song fi followed up with Defendants regarding the video's removal, Defendants asserted only that Song fi had violated Section 4H of the Terms of Service, which prohibits the use of automated or robotic means to enhance a video's view count. Brotherton Dec. ¶ 7 & Exh. C. The

3

accusation was false: At no time has Song fi, any other Plaintiff, or any other agent thereof used automatic or robotic means to enhance the view count of "Luv ya." *Id.* ¶ 7.

On May 12, 2014, legal counsel for Song fi wrote to the in-house counsel of Defendants and put them on notice that they were, among other things, defaming Song fi and interfering with its ongoing business relations because of the false and defamatory Content Statement they had posted in place of "Luv ya." Brotherton Dec. ¶ 8 & Exh. D. Defendants never responded to this counsel's letter. *Id.* ¶ 8.

Defendants' false and defamatory Content Statement can still be seen wherever the original link to the "Luv ya" music video has been shared such as on social networks such as Facebook and attached to emails from one person to another. Brotherton Dec. ¶ 9. Only after the U.S. District Court for the District of Columbia, at an August 1, 2014 hearing on Plaintiff Song fi's Motion for a Temporary Restraining Order ("TRO"), advised Defendants that their Content Statement was false and defamatory, and that Song fi had a valid defamation claim, did Defendants change the prior statement to read "This video has been removed." *Id.*

Defendants brought great sadness and frustration to Plaintiff N.G.B., who had had his video seen by his entire kindergarten class at his school only days prior to Defendants' removing it and posting the false and defamatory notice. Brotherton Dec. ¶ 10. The link to "Luv ya" was shared with the parents of the kindergarten class, who could see the Content Statement when they tried to watch the video. *Id.* Defendants also inflicted great financial harm and injury to the reputations of the Rasta Rock Opera and Song fi as a result of the posting of the Content Statement in place of the "Luv ya" music video. *Id.*

**B.     Procedural Summary**

On July 25, 2014, Plaintiff Song fi filed its original Complaint in the U.S. District Court for the District of Columbia.[1] At the same time, Song fi also filed a motion for a temporary restraining order ("TRO") or preliminary injunction ("PI") that would require Defendants to remove their false and defamatory Content Statement and re-post the "Luv ya" video to its former location on the

---

[1] The other plaintiffs were added when Song fi filed its First Amended Complaint (FAC) on August 15, 2014.

4

YouTube website. Only if "Luv ya" was restored to its original link would Defendants' Content Statement not continue to be seen by those with whom the "Luv ya" link had been shared. The case was assigned to U.S. District Judge Rosemary Collyer, and a TRO hearing was held on August 1, 2014.

In opposing the issuance of a TRO, Defendants argued that the Content Statement was not libelous because it was a true statement. It was true, Defendants asserted, because the definition of "Content" in Section 2.A of the Terms of Service includes "interactive features and other materials" that a user may view on YouTube and therefore includes the view counter next to every video. Even though Section 2.A's definition of "Content" says nothing about view counters, Defendants asserted that if a view counter has been altered in a way prohibited by Section 4.H of the Terms of Service, that altered count constitutes prohibited "Content" within the meaning of Section 2.A.

> And I'm not persuaded by the prior case law that the flaw that YouTube found affected content in the way that the [Content Statement] that they left would suggest. And so that misstatement, knowing misstatement, if you will - it had to be knowing, somebody put it up - that misstatement might, in fact, be injurious.

ECF Docket No. 12 (Transcript of August 1, 2014 TRO Hearing) at 15. Later, Judge Collyer cited the Community Guidelines as indicative of the defamatory meaning a reasonable viewer would infer from the Content Statement:

> The community guidelines, that would tell you the problem with the content is something is really unattractive such as pornography, et cetera.

Id. at 32.

Judge Collyer flatly rejected Defendants' argument and concluded that the YouTube view counter could in no way be interpreted as uploader Content under the Terms of Service:

> I put up my video, and the entire world laughs hysterically at a judge pretending to have anything that's worth watching on YouTube and everybody is laughing so hard it, quote, goes viral and before you know it there's just a billion views, okay. I had nothing to do with that. A friend put it up. But never mind. I had nothing to do with it. Am I responsible for the number if I had nothing to do with it? I didn't have anything to do with all those people who looked at this video. Yes, I can see that number, they can see that number, my law clerk can see that number, you can see the number. It keeps changing. But why am I responsible for that number?

5

        \*   \*   \*   \*   \*   \*

> I don't think content of a video, content that a user puts on YouTube is a counter which YouTube itself puts on. The counter is a YouTube thing. It's not the user's. I have nothing to do with it no matter how many times I view the same video. It's YouTube's counter, not mine. Even if I'm malintentioned, there is, you know, I don't affect that counter. It's not my counter. It's your counter, your client's counter.

*Id.* at 34-36.

Judge Collyer ultimately denied Plaintiffs' TRO motion, holding that the forum selection clause in the Terms of Service deprived her court of jurisdiction. But she advised Defendants' counsel:

> I think you have a major problem with your contract.... I think that if you ever got to the merits of whether or not the - whether or not the statement that there was a content violation... I'm only one judge; there are 400 and some odd of us - but if you got to the merits here, I would say you have a problem.

*Id.* at 36. Later, in addressing Plaintiffs' counsel, Judge Collyer concluded:

> And if another judge who has full venue and jurisdiction agrees with my analysis of the contract, then you have a defamation claim.

*Id.* at 40. Judge Collyer subsequently transferred the case to this Court.

### III. <u>Argument</u>

**A. Summary Judgment is Appropriate on Motions Such as This Where Facts Are Not in Dispute and the Only Question Presented is One of Law.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this instance, there is no genuine dispute as to any material fact because the issue is one of law. In such instances, summary judgment is not a disfavored procedure. *Tokio Marine & Fire Ins. Co., Ltd. v. United Air Lines, Inc.*, 933 F. Supp. 1527, 1529 (C.D. Cal. 1996). Rather, it is a useful procedural tool in avoiding trial. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565 (Fed Cir. 1991). It is particularly appropriate where no issues are presented involving the credibility of witnesses, *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005), *cert. denied*, 547 U.S. 1159 (2006); motivation or intent, *Douglas v. Anderson*, 656 F.2d 528, 535(9th Cir. 1981); bias, *Alameda Books, Inc. v. City of*

6

*Los Angeles,* 631 F.3d 1031, 1043 (9th Cir. 2011); or a person's state of mind. *F.T.C. v. Network Services Depot, Inc.,* 617 F.3d 1127, 1139 (9th Cir. 2010). The issues in the present motion involve none of these complications.

**B. Summary Judgment Is Particularly Appropriate in Libel *Per Se* Cases Such as This One Where Only Questions of Law Are Presented.**

Under California law, a libel is a written publication made in an unprivileged context that is false and that causes another to be exposed to hatred, contempt, ridicule or obliquy, or causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. Calif. Civil Code §45. It is an invasion of the interest in a person's reputation. *Anthoine v. North. Cent. Counties Consortium,* 571 F.Supp.2d 1173 (E.D. Cal. 2008). California courts have added requirements that such a publication be intentional in nature and that the publication in question be of a factual nature - i.e., susceptible of being proved true or false - rather than an opinion. *Price v. Stoessel,* 620 F.3d 992, 998 (9th Cir. 2010), *citing Gilbert v. Sykes,* 147 Cal. App. 4th 13, 53 Cal Rptr. 3d 752, 764 (2007). They have also held that the publication must be made to one or more persons who understand its defamatory meaning and application to the injured party. *Scott v. Solano County Health and Social Services Department,* 459 F.Supp.2d 959 (E.D. Cal. 2006).

A libel that is defamatory without the need to introduce explanatory matter is libel on its face or "*per se*" libel. *Id.* § 45a; *Slaughter v. Friedman,* 185 Cal. Reptr. 244, 32 Cal. 3d 149, 649 P.2d 886. Such a libel is one that has a natural tendency to injure a person's reputation. *Taus v. Loftus,* 54 Cal. Rptr. 3d 775, 804, 40 Cal 4th 683, 151 P.2d 1185 (Cal. 2007). Examples of libelous publications that can have such a tendency are those asserting a refusal to pay just debts, *Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 783 (9th Cir. 1999), and mental derangement, *Crowe v. County of San Diego,* 608 F.3d 406, 441 (9th Cir. 2008). California courts have imposed virtually no restrictions on what kinds of publications may be held libelous *per se.* The publication, furthermore, does not have to state explicitly the defamation that is intended. *Condit v. National Enquirer, Inc.,* 248 F.Supp.2d 945 (E.D. Cal. 2002) (newspaper article regarding alleged "blowup phone call" between wife of former United States Congressman and intern with

7

whom he allegedly had an affair, which referred to such call as a "heated phone screamfest" and stated that wife was "enraged," was reasonably susceptible of defamatory meaning; such statements attributed to wife a bitter and angry disposition, intemperance, and loss of control, which could subject her to contempt and humiliation). Libels *per se* are actionable even if they are susceptible to innocent interpretations. *MacLeod v. Tribune Pub. Co.,* 343 P.2d 36, 52 Cal.2d 536 (Cal. 1959).

Finally, whether a publication is libelous on its face is a question of law to be decided from the bench. *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1010 (9th Cir. 2001); (citing *Newcombe v. Adolf Coors Co.,* 157 F.3d 686, 695 (9th Cir. 1998). If a publication is shown to be libelous *per se,* furthermore, damages are presumed. *Clark v. McClurg,* 215 Cal. 279, 284, 9 P.2d 505 (Cal. 1932). In both instances, no factual inquiry is required.

Summary judgment motions, therefore, are particularly appropriate where, as here, a libel *per se* is alleged.

### C. Defendants' "Content" Statement is Libelous *Per se.*

The primary question presented by this motion for summary judgment is whether Defendants' statement that "This video has been removed because its content violated YouTube's Terms of Service" is libelous on its face.

It is indeed.

First, there is no question that the publication of the Content Statement by Defendants was an intentional act. Defendants posted the statement on the YouTube website purposely to send a message to all who attempted to watch the "Luv ya" video.

Second, there is no question that the Content Statement was a factual statement rather than one of opinion. It was capable of being proved true or false: i.e., either the content of the "Luv ya" video violated the YouTube Terms of Service, and more specifically the content provisions of the YouTube Community Guidelines, or it didn't.

Third, there is no question that the average viewer would know that the Content Statement pertained to Plaintiffs because that Statement made specific reference to "[t]his video" that appeared on the Rasta Rock Opera's video channel on the YouTube website.

8

Fourth, there is no question that the Content Statement was false. The Content Statement said that the content of "Luv ya" violated YouTube's Terms of Service. Since all allegedly libelous *per se* statements must be viewed through the eyes of the average viewer, the "content" of a video is what he sees in that video. That is the plain meaning of "content." Defendants acknowledge this in their Community Guidelines when they define prohibited "content" through many examples:

* "YouTube is not for pornography or sexually explicit content."

* "...bad stuff like animal abuse, drug abuse, under-age drinking and smoking, or bomb-making.

* "Graphic or gratuitous violence...."

* "...accidents, dead bodies, or similar things intended to shock or disgust."

\* \* \* \* \* \* \*

* "...predatory behavior, stalking, threats, harrassment, intimidation, invading privacy, revealing other people's personal information, or inciting others to commit violent acts...

As noted earlier, "LuvYa" is the story of two five year olds who dress up and go to a lunch on Valentine's Day. As they have lunch, they are serenaded by a trumpeter and guitarist. That is what gives the video its charm.

Does the statement that YouTube posted in place of the "Luv ya" music video have a natural tendency to injure the reputations of Plaintiffs? It certainly does. How could the reputation of any organization or any individual not be injured by a claim that they have participated in a video presentation containing content so highly objectionable to public standards that it might be pornography or pictures of animal cruelty or dead people? How could such an innuendo not, in the words of California's libel statute, expose the participants in such a video to contempt or obliquy or cause them to be shunned or avoided, or injure them in their professional reputations?

Would the average viewer understand the defamation that is inherent in Defendants' Content Statement? Of course he would. How could he avoid it? Defendants' Content Statement was intended to convey a negative message about Plaintiffs that Defendants' Terms of Service had been

violated by one or more of these forbidden forms of content in the "Luv ya" video. It was also intended to state that those participating in the video had engaged in something highly disreputable. There is no other way that the average viewer would interpret the Content Statement.

As Judge Collyer concluded after analyzing the Content Statement, Plaintiffs have a valid libel claim as a matter of law.

### IV. Conclusion

For the reasons set forth above, Defendants' Content Statement is a false and defamatory statement about the "Luv ya" video that has a natural tendency to injure the reputations of all those associated with it. It is thus libelous *per se,* and this Court should enter judgment accordingly. A hearing on damages arising from such injury should be held in the damages phase of this proceeding upon the resolution of the remaining counts. At that time, Plaintiffs will reiterate their claim for punitive damages since Defendants' libel was done intentionally and with callous disregard for the injury that it inflicted.

Respectfully submitted,

Dated: February 2, 2015                COZEN O'CONNOR


By:   /s/ Erik L. Jackson
      Erik L. Jackson
      Attorneys for Plaintiffs