DAVID H. KRAMER, State Bar No. 168452
JACOB T. VELTMAN, State Bar No. 247597
SARA E. ROWE, State Bar No. 295353
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONG FI, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC. and YOUTUBE, LLC,<br><br>Defendants. | Case No. 3:14-cv-05080-SC<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: May 1, 2015<br>Time: 10:00 a.m.<br>Crtrm: 1<br>Before: Hon. Samuel Conti |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

COUNTER-STATEMENT OF FACTS .............................................................................2

      A.     Defendants Google Inc. and YouTube, LLC ................................................2

      B.     The "LuvYa" Video .......................................................................................3

PROCEDURAL HISTORY ..................................................................................................3

ARGUMENT ..........................................................................................................................5

I.      THERE IS NO REASON TO ADDRESS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN LIGHT OF YOUTUBE'S MOTION TO DISMISS ..........5

II.     PLAINTIFFS' MOTION SHOULD ALSO BE DENIED AS PREMATURE PURSUANT TO RULE 56(D) ........................................................................................5

III.    PLAINTIFFS' MOTION FAILS ON THE MERITS BECAUSE PLAINTIFFS HAVE NO LEGALLY VIABLE CLAM FOR LIBEL PER SE .......................................7

      A.     YouTube's Notice of Removal Was Not False ............................................7

      B.     The Notice of Removal Cannot Be Libelous on Its Face Because It Refers to Extrinsic Material ........................................................................................9

      C.     The Notice of Removal Was Not Directed to Plaintiffs ............................11

      D.     The Notice of Removal Had No Defamatory Meaning .............................12

      E.     YouTube Did Not Act With The Intent Required For A Defamation Claim ........14

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barger v. Playboy Enters.*, 564 F. Supp. 1151 (N.D. Cal. 1983) ........................................................11

*Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377 (1986) ........................................................9, 10

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033 (1986) ........................................................11

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003) ........................................................5

*Carney v. Santa Cruz Women Against Rape*, 221 Cal. App. 3d 1009 (1990) ........................................................14

*Christian Research Institute*, 148 Cal. App. 4th 71 (2007) ........................................................14

*Ferlauto v. Hamsher,* 74 Cal. App. 4th 1394 (1999) ........................................................11

*Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065 (N.D. Cal. 2011) ........................................................5

*Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302 (1965) ........................................................13

*Huynh v. Vu*, 111 Cal. App. 4th 1183 (2003) ........................................................13

*In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087 (N.D. Cal. 2002) ........................................................7

*Ions v. Harbison*, 112 Cal. 260 (1896) ........................................................14, 15

*Lewis v. YouTube*, No. 13-cv-256300 (Santa Clara Super. Ct. Feb. 25, 2014) ........................................................8, 9

*Lincoln Nat'l Life Ins. Co. v. Silver*, No. 86-cv-7175, 1991 U.S. Dist. LEXIS 13857 (N.D. Ill. Oct. 1, 1991) ........................................................12, 13

*Masson v. New Yorker Magazine*, 832 F. Supp. 1350 (N.D. Cal. 1993) ........................................................12, 14

*Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344 (1998) ........................................................7

*Mt. Hood Polaris, Inc. v. Martino*, 563 F.3d 981 (9th Cir. 2009) ........................................................14

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998) ........................................................10

*Noral v. Hearst Publications, Inc.*, 40 Cal. App. 2d 348 (Cal. App. 1940) ........................................................11

*Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1 (1999) ........................................................12

*Steinmetz v. GE Co.*, No. 08-cv-1635, 2009 U.S. Dist. LEXIS 59712 (S.D. Cal. July 13, 2009) ........................................................10

*Thomas v. L.A. Times Commc'ns LLC*, 189 F. Supp. 2d 1005 (C.D. Cal. 2002) ........................................................14

*Thompson v. Gibson*, 17 F. App'x 753 (10th Cir. 2001) ........................................................5

*Universal Grading Serv. v. eBay, Inc.*, No. 09-cv-2755, 2011 U.S. Dist. LEXIS 25193 (N.D. Cal. Mar. 8, 2011) ..........................................................................................10

*USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010) ......................................13

*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d. Cir. 2012)........................................2

*Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025 (N.D. Cal. 2011)..................................................................................................................................12

*Woods v. Prot. One Alarm Monitoring, Inc.*, 628 F. Supp. 2d 1173 (E.D. Cal. 2007) .....................13

**STATUTES**

Cal. Civ. Code § 45 ............................................................................................................9, 12

Cal. Civ. Code § 45a ................................................................................................................11

Cal. Civ. Code § 48a ................................................................................................................10

**RULES**

Fed. R. Civ. P. 56(d)........................................................................................................1, 5, 6, 7

# INTRODUCTION

Defendants Google Inc. and YouTube Inc. (collectively, "YouTube") submit this opposition to Plaintiffs' motion for partial summary judgment on their claim of libel *per se*. Plaintiffs' motion is a waste of the Court's time and the parties' resources. Now pending before the Court is YouTube's Motion to Dismiss Plaintiffs' First Amended Complaint, which YouTube believes should result in the dismissal of all of Plaintiffs' claims and the termination of this case. Accordingly, YouTube suggests that the Court first decide YouTube's motion, before taking up Plaintiffs' bid for partial summary judgment. But even if Plaintiffs' claims survive dismissal, Plaintiffs would not be entitled to the summary adjudication they have requested. Discovery in this case has not even begun, and even after filing this motion, Plaintiffs have refused to provide YouTube with information that bears directly on the issues that Plaintiffs have raised. Pursuant to Fed. R. Civ. P. 56(d), the Court should deny Plaintiffs' motion or defer consideration of it until YouTube has had the opportunity to obtain relevant discovery.

Beyond the procedural improprieties of Plaintiffs' motion, it fails on the merits. Plaintiffs have no legally viable claim for libel *per se* and have not come close to carrying their burden of proving such a claim. That is so for multiple reasons. *First*, there can be no libel because the YouTube statement at issue here (that Plaintiffs' video was removed because its content violated YouTube's Terms of Service) was entirely true. *Second*, a claim of libel *per se* requires a statement that is defamatory on its face, but, even on Plaintiffs' account, extrinsic material is needed to perceive the supposedly defamatory nature of YouTube's statement. *Third*, YouTube's statement is not defamatory because it did not identify any Plaintiff by name and there is no indication that anyone would have understood it as referring to them. *Fourth*, YouTube's statement would not have exposed Plaintiffs to the kind of "hatred" or "shunning" required for defamation liability. *Fifth*, even if YouTube's notice did somehow amount to a false statement of fact, YouTube did not speak with the required degree of fault. Plaintiffs offer no evidence that YouTube did not reasonably believe its statement to be true or that it intended the statement to convey a defamatory meaning. For all of these reasons, Plaintiffs' premature and unsupported motion for summary judgment should be denied.

**COUNTER-STATEMENT OF FACTS**

**A.     Defendants Google Inc. and YouTube, LLC**

Defendant Google is headquartered in Santa Clara County, California. FAC ¶ 6. Since 2006, YouTube has been a wholly-owned subsidiary of Google. *Id.* ¶ 7. YouTube operates the popular video-sharing website located at <www.youtube.com>, where users can share and watch personal videos. MSJ at 2. Time Magazine named the YouTube service "Invention of the Year" for 2006. Associated Press, "YouTube Wins Time's 'Invention of the Year'" (Nov. 6, 2006), available at http://www.nbcnews.com/id/15592918. Since then, YouTube has only become more popular. As of 2010, users watched videos on YouTube more than one billion times a day, and uploaded more than 24 hours of new video to the site every minute (*Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 28 (2d. Cir. 2012)), and those figures continue to grow.

The relationship between YouTube and its users is governed by the Terms of Service Agreement ("the Agreement") posted on the YouTube website at www.youtube.com/terms. Declaration of Katie Hushion ("Hushion Decl.") ¶ 3. Before a user can upload a video to the YouTube service, the user must create an account and assent to the Agreement. *Id.*[1] The Agreement vests YouTube with significant control and discretion over the operation of its service. It expressly reserves to YouTube the right "to remove Content without prior notice" and "to discontinue any aspect of the Service at any time." Hushion Decl., Ex. 1 ¶¶ 4.J, 6.F; *see also id.* ¶ 7.B ("YouTube may at any time, without prior notice and in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service."). And the Agreement specifically forbids users from using automated systems to artificially inflate the view counts associated with videos on YouTube: "You agree not to use or launch any automated system, including without limitation, 'robots,' 'spiders,' or 'offline readers,' that accesses the Service in a manner that sends more request messages to the YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser." *Id.* ¶ 4.H.

---

[1] The Agreement is attached as Exhibit 1 to the Declaration of Katie Hushion.

**B.     Plaintiffs' "LuvYa" Video**

On February 14, 2014, Plaintiff Song fi, Inc. allegedly "produced and uploaded onto the YouTube website a video titled "LuvYa LuvYa LuvYa." FAC ¶ 31; MSJ at 2. In April 2014, YouTube concluded that the "Luv Ya" video had been the subject of automated efforts to fraudulently (and substantially) inflate the view count for the video. Hushion Decl. ¶ 8. YouTube based that determination in part on the fact that there were an inordinate number of requests to view the video over a very short time period coming from mobile devices, far more than videos normally receive, and that many of the views were of an abbreviated or virtually no duration. *Id*. In response, YouTube removed the video from its original location and reposted it to a new location on the service so that it could be available to the public but would no longer be associated with the suspect view count. *Id*. ¶¶ 9-10. YouTube also posted a message at the original location of the video explaining that the video had been removed from that location "because its content violated YouTube's Terms of Service." *Id.* ¶ 9.

**PROCEDURAL HISTORY**

This action was originally filed in the U.S. District Court for the District of Columbia. On October 21, 2014, YouTube moved to dismiss the First Amended Complaint on numerous, independent grounds. Dkt. #18. On October 29, 2014, Judge Rosemary Collyer transferred the case to this Court pursuant to a forum-selection clause in YouTube's Terms of Service Agreement that requires disputes to be litigated in the Northern District of California. Dkt. #20. Judge Collyer also denied YouTube's pending motion to dismiss without prejudice. *Id.*[2]

On December 23, 2014, after transfer had been completed, YouTube renewed its motion to dismiss in this Court. Dkt. #26. On February 2, 2015, Plaintiffs filed their Opposition to the Motion to Dismiss. Dkt. #31. At the same time, although YouTube's Motion to Dismiss was still pending and discovery in this case had not even opened, Plaintiffs moved for summary judgment with respect to their claims for libel *per se*. Dkt. #32. While Plaintiffs asserted that their summary judgment motion did not turn on factual issues and could be resolved without

---

[2] YouTube refers the Court to its Motion to Dismiss for a more extensive discussion of the procedural history of this matter prior to its transfer to this Court.

1 discovery, they supported it with a declaration from Joseph N. Brotherton containing extensive averments of fact. None of these averments were supported by evidence that had been produced to YouTube in discovery and YouTube of course had not had the opportunity to depose Mr. Brotherton.

YouTube objected to Plaintiffs' premature motion. On February 4, 2015, YouTube's counsel sent a letter to Plaintiffs' counsel demanding that Plaintiffs withdraw the motion. *See* Declaration of Jacob T. Veltman ("Veltman Decl."), Ex. 1. YouTube's counsel explained that "[w]e cannot understand how a motion for partial summary judgment could possibly be proper at this earliest stage of the case. Your motion relies extensively on declaratory evidence provided by a witness that Defendants had no opportunity to depose." *Id.* When Plaintiffs refused to withdraw the motion, YouTube's counsel sent another letter on February 5, reiterating that "the submission of an evidence-based motion prior to the *beginning* of discovery is improper here, where a motion to dismiss is pending. Your assertion that the issues raised by your motion can be resolved without discovery is belied by your motion's extensive reliance on declaratory and documentary evidence." *Id.*, Ex. 2.

Plaintiffs again refused to withdraw the motion, and on February 20, YouTube's counsel sent a third letter. YouTube explained that if Plaintiffs would not withdraw the Motion, YouTube required certain limited discovery in order to oppose it on the merits. *Id.*, Ex. 3. YouTube requested that Plaintiffs make Plaintiff Joseph Brotherton and representatives of Plaintiffs Song fi, Inc. and Rasta Rock, Inc. available for deposition, that Plaintiffs produce documents in their control reflecting the relationship between the Plaintiffs and the account used to upload the "Luv Ya" video, and that Plaintiffs produce documents in their control regarding the view count of the "Luv Ya" video. *Id.* Plaintiffs refused to provide any of this discovery. On February 24, Plaintiffs' counsel responded that Plaintiffs were unwilling to provide any pre-hearing discovery and that YouTube should take up with the Court any issues regarding the unavailability of such information. *Id.*, Ex. 4.

DEFS.' OPP. TO MOTION FOR SUMMARY JUDGMENT -4-
CASE NO. 3:14-CV-05080-SC

**ARGUMENT**

## I. THERE IS NO REASON TO ADDRESS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN LIGHT OF YOUTUBE'S MOTION TO DISMISS

This case is still at the pleadings stage. YouTube moved to dismiss each of Plaintiffs' claims well before Plaintiffs filed their motion for partial summary judgment. YouTube's motion is still pending and, if successful, there would be nothing left of this case. Even if the Court does not dismiss the claims with prejudice, a dismissal of the claims with leave to amend would also moot Plaintiffs' present motion. Both as a practical matter and as a matter of sound procedure, the Court should resolve whether the Plaintiffs' First Amended Complaint states a claim before any consideration is given to Plaintiffs' summary judgment motion. *See, e.g., Thompson v. Gibson*, 17 F. App'x 753, 756 (10th Cir. 2001) ("In order for a court to rule on a summary judgment motion, the suit must first make it past the pleadings stage."). If the Court determines that the FAC does not state a claim for libel, Plaintiffs' summary judgment motion will be moot.

## II. PLAINTIFFS' MOTION SHOULD ALSO BE DENIED AS PREMATURE PURSUANT TO RULE 56(d)

If the Court does not grant YouTube's motion to dismiss with respect to Plaintiffs' libel claim, Plaintiffs' motion for summary judgment should still be denied based on Rule 56(d). This case is still at the pleadings stage. Plaintiffs' motion will be heard before any discovery has been exchanged—and indeed before YouTube has even answered the complaint and while its motion to dismiss is still pending. The Ninth Circuit has explained that when "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56[d] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011) ("[T]he request is generally granted with liberality. This is especially true when the request is filed at such an early juncture of the case."). That is precisely the situation here. Discovery in this case has not even started, and Plaintiffs have refused to provide any evidence to YouTube in connection with their motion. The lack of

discovery means that YouTube cannot "present facts essential to justify its opposition," making this a clear-cut case for denying or deferring consideration of Plaintiffs' motion for summary judgment. Fed. R. Civ. P. 56(d).

While Plaintiffs suggest that their motion does not involve the resolution of factual issues, their memorandum of law and the accompanying Declaration of Joseph Brotherton make numerous factual assertions in purported support of the motion. Those include:

- Plaintiff Song fi, Inc. uploaded the "Luv Ya" video to the YouTube service (MSJ at 2; Brotherton Decl. ¶ 2);

- Plaintiff "N.G.B." was one of the actors in the "Luv Ya" video (MSJ at 2; Brotherton Decl. ¶ 3);

- Plaintiff Joseph Brotherton was one of the actors in the "Luv Ya" video (MSJ at 2; Brotherton Decl. ¶ 3);

- Plaintiff Rasta Rock, Inc. performed the musical score featured in the "Luv Ya" video (MSJ at 2; Brotherton Decl. ¶ 3);

- Persons unconnected with Plaintiffs viewed the notice of removal (MSJ at 4; Brotherton Decl. ¶ 10);

- "[T]he average viewer [would] understand the defamation that is inherent in Defendants' Content Statement" (MSJ at 9); and

- "[T]he average viewer would know that the Content Statement pertained to Plaintiffs because that Statement made specific reference to '[t]his video' that appeared on the Rasta Rock Opera's video channel on the YouTube website" (MSJ at 8).

Veltman Decl. ¶ 22. These factual assertions are disputed and neither have nor could have been explored in discovery. As noted, Plaintiffs refused after filing their summary adjudication motion to provide any evidence to YouTube; that incudes rejecting YouTube's request to depose Mr. Brotherton about the subject matter of his declaration. *Id*. ¶ 18. Given the total absence of discovery in this case, YouTube has no way to evaluate or challenge these and other factual assertions that Plaintiffs have made in connection with their motion. *Id*. ¶¶ 23-25. YouTube may also have additional defenses to Plaintiffs' libel claim that require discovery from Plaintiffs or third parties. *Id*. ¶ 26-28. Before Plaintiffs' motion is considered on the merits, YouTube should be allowed to take discovery regarding at least the following issues:

- Whether the Plaintiffs are public figures or limited-purpose public figures such that actual malice is an element of their claims;

- Whether the averments in the Brotherton Declaration regarding the involvement of Plaintiffs in the "Luv Ya" video are accurate;

- Whether Plaintiffs lack the rights to any of the intellectual property used in the "Luv Ya" video such that the video itself, in addition to the associated view count, violated the Terms of Service Agreement; and

- Whether Plaintiffs' allegations that third parties viewed the removal notice, understood it to have a defamatory connotation, and understood it to refer to Plaintiffs have any basis.

*Id.* ¶¶ 23-28. Rule 56(d) prevents Plaintiffs from preempting proper factual development of these potentially dispositive issues matters by moving for partial summary judgment before YouTube has had any opportunity to obtain relevant discovery. *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1094-1095 (N.D. Cal. 2002) ("summary judgment should not be granted when there are relevant facts remaining to be discovered"). Under the circumstances, Plaintiffs' motion for partial summary judgment must be denied or deferred.

### III. PLAINTIFFS' MOTION FAILS ON THE MERITS BECAUSE PLAINTIFFS HAVE NO LEGALLY VIABLE CLAM FOR LIBEL PER SE

While the pendency of YouTube's motion to dismiss and Rule 56(d) should preclude the Court from addressing Plaintiffs' motion on the merits, Plaintiffs' motion fails even on its own terms because Plaintiffs have no viable claim for libel *per se*. That is so for multiple reasons.

#### A. YouTube's Notice of Removal Was Not False

First, Plaintiffs are not entitled to partial summary judgment on their libel claim for the basic reason that the statement at issue in this case—YouTube's notice of removal—was not false. *See Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344, 1353 (1998) ("'An essential element of libel is that the publication in question must contain a false statement of fact.'"). The notice stated that Plaintiffs' "Luv Ya" video was removed "because its content violated YouTube's Terms of Service." Hushion Decl. ¶ 9. Plaintiffs do not dispute that view count manipulation is prohibited by Section 4.H of the Terms of Service Agreement. Nor do they dispute that artificial means were used to inflate the "Luv Ya" video's view count. Plaintiffs claim instead that view counts are not "content" under YouTube's Terms of Service Agreement. Plaintiffs are wrong.

As discussed in YouTube's motion to dismiss, view counts are "content" within the meaning of the Agreement. "Content" is a defined term:

> The text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials you may view on, access through, or contribute to the Service.

Hushion Decl., Ex. 1 ¶ 2.A. View counts are included in this definition in at least three different ways: they constitute "text," "interactive features," and/or "materials" that YouTube users "view on" and "access through" the Service (arguably view counts also constitute software and scripts as well).

Plaintiffs argue that the statement in YouTube's Community Guidelines that "YouTube is not for . . . sexually explicit content" indicates that "the 'content' of a video is what [a user] sees in the video." Opp. at 3, 8. But the obvious fact that the audio/visual component of a video is an aspect of a video's content certainly does not mean that it is the only thing that constitutes "content" as that term is used in the Agreement. Neither the Community Guidelines nor anything else that Plaintiffs cite says anything like that—and certainly does not contradict or narrow the very broad definition of "content" expressly set out in YouTube's governing Agreement.

Indeed, one recent decision holds squarely that the term "content" as used in the YouTube Agreement is not limited to the videos displayed to users of the YouTube website. In a very similar case involving the removal of a YouTube video due to violations of the Agreement, the court in *Lewis v. YouTube* expressly rejected the same narrow interpretation of "content" that Plaintiffs assert here. The court explained:

> "Content" as defined by the Terms of [Service] is not so limited as Plaintiff asserts: "'Content' includes the text . . . interactive features and other materials you may view on, access through, or contribute to the Service.' Plainly, this definition of 'Content' would encompass Plaintiff's 'use [of] the 'share' feature of the website to share her videos with other users that Defendant has determined to violate the Terms of Service. Plaintiff's argument is without merit.

*Lewis v. YouTube*, No. 13-cv-256300 (Santa Clara Super. Ct. Feb. 25, 2014), Veltman Decl., Ex. 5 at 8. The same is true here.[3]

---

[3] Plaintiffs suggest that Judge Collyer endorsed their construction of the Agreement during oral argument on their Motion for Temporary Restraining Order. MSJ at 5-6. As YouTube
(continued...)

DEFS.' OPP. TO MOTION FOR SUMMARY JUDGMENT -8-
CASE NO. 3:14-CV-05080-SC

Plaintiffs also argue that the court must give "content" some other meaning because "libelous *per se* statements must be viewed through the eyes of the average viewer[.]" MSJ at 9. Even if this is generally true (Plaintiffs provide no legal authority for that point), this case is different because here the Agreement governing the relations between the parties defines the term in a specific way, and the statement at issue expressly references that Agreement.

In any event, the ordinary definition of "content" in the Internet context also includes view counts. The Oxford English Dictionary, for instance, defines content as "[i]nformation made available by a website or other electronic medium[.]"[4] There is no question that view counts are information made available by websites and provided through the Internet.

Whether the Court applies the Agreement's definition of "content" or the term's ordinary meaning in the Internet context, the notice of removal was accurate. Under any understanding of the term, YouTube videos with artificially manipulated view counts include content that violates YouTube's Terms of Service. YouTube did not commit libel by posting a notice on its website that merely and truthfully said so. Plaintiffs' libel claim fails for this reason alone.

### B. The Notice of Removal Cannot Be Libelous on Its Face Because It Refers to Extrinsic Material

But there is more. California law recognizes two distinct types of libel, libel *per se* and libel *per quod*. Libel *per se* applies only to statements that are directly defamatory on their face "without the necessity of explanatory matter." Civ. Code § 45. "Perhaps the clearest example of libel per se is an accusation of crime." *Barnes-Hind, Inc. v. Super. Ct.*, 181 Cal. App. 3d 377, 385 (1986). Libel *per quod* applies to statements that cannot be understood, or from which no defamatory meaning can be inferred, unless the reader is familiar with "specific facts and

---

(...continued from previous page)

explained in its reply in support of its Motion to Dismiss, Judge Collyer's passing remarks on this issue were not part of any ruling and carry no weight. Judge Collyer denied Plaintiffs' motion on procedural grounds. Dkt. # 12. The remarks she made about the merits of the case were made during the informal back-and-forth of oral argument and were not included in her subsequent written order. They are not law of the case and have no significance for any of the legal issues now before this Court.

[4] Oxford Online American English Dictionary, http://www.oxforddictionaries.com/us/definition/american_english/content (2015).

DEFS.' OPP. TO MOTION FOR SUMMARY JUDGMENT     -9-
CASE NO. 3:14-CV-05080-SC

circumstances" outside the four corners of the statement "that are not matters of common knowledge rationally attributable to all reasonable persons." *Id.* at 387. A plaintiff asserting claims based on "language not libelous on its face" (*i.e.*, libel *per se*) must prove that he has suffered economic damages. Civ. Code § 48a.

Presumably because they cannot demonstrate economic damages, Plaintiffs have moved for partial summary judgment solely on a theory of libel *per se*. *See* MSJ at 1. However, the allegedly defamatory statement expressly references an extrinsic document (the Terms of Service Agreement). Plaintiffs suggest that readers would infer from the removal statement that the "Luv Ya" video contained animal cruelty or pictures of the deceased because those types of videos are among those prohibited by the Agreement. Opp. at 9. This inference is not only unreasonable, but impossible to draw from the statement that the video was removed "because its content violated the Terms of Service" without an understanding of exactly what the Terms of Service prohibit. The fact that Plaintiffs have submitted a copy of the Agreement as evidence in support of their Motion[5] contradicts their assertion that the notice of removal could possibly have been libelous on its face. "A publication is libelous on its face only if there is no need to have explanatory matter introduced." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998); *see also, e.g. Universal Grading Serv. v. eBay, Inc.*, No. 09-cv-2755, 2011 U.S. Dist. LEXIS 25193, at *30 (N.D. Cal. Mar. 8, 2011) (statement that implied that the plaintiff did not meet eBay's policies for coin graders was not *per se* libelous because "an extrinsic item (the Policy) is necessary to explain the alleged defamatory meaning").

Similarly, Plaintiffs' assertion that the notice of removal contained "innuendo" that the "Luv Ya" video was objectionable (Opp. at 9) is totally inconsistent with a claim of libel *per se*. To be *per se* libelous a statement must be directly and obviously defamatory, not defamatory through innuendo. *See, e.g.*, *Steinmetz v. GE Co.*, No. 08-cv-1635, 2009 U.S. Dist. LEXIS 59712, at *18 (S.D. Cal. July 13, 2009). Indeed, the very definition of libel *per se* in California is

---

[5] *See* Exhibit A to Declaration of Joseph N. Brotherton (Dkt. # 34).

a libel that is defamatory "without the necessity of explanatory matter, such as . . . innuendo." Civ. Code § 45a. Plaintiffs own approach to this claim thus defeats it as a matter of law.

### C. The Notice of Removal Was Not Directed to Plaintiffs

Plaintiffs' Motion should also be denied because there is no evidence that any viewer understood the notice to refer to Plaintiffs. Under California law, "Plaintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, i.e., referred to them personally." *Barger v. Playboy Enters.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983). Plaintiffs who are not identified by name bear a high burden of demonstrating that the statement "referred to them personally" and was understood to refer to them by the statement's viewers. *Ferlauto v. Hamsher,* 74 Cal. App. 4th 1394, 1404 (1999) ("He cannot constitutionally establish liability unless he proves that the contested statements are 'of and concerning,' him either by name or by 'clear implication.'"); *Noral v. Hearst Publications, Inc.*, 40 Cal. App. 2d 348, 352 (Cal. App. 1940) ("Certainty as to the person who is defamed" is a fundamental necessity). As the California Supreme Court has explained:

> The "of and concerning" or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt. To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society.

*Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986).

This requirement sinks Plaintiffs' libel claim. YouTube's notice of removal did not refer to any of the Plaintiffs by name or say that any identifiable person violated the Terms of Service. Nor did the notice even reference any of the Plaintiffs generically, such as by saying "the uploader of this video violated the Terms of Service." Instead, it said only that the *video* at that location had been removed because its content violated the Terms of Service. That is not enough to satisfy the "of and concerning" requirement.

Plaintiffs argue that the video "appeared on the Rasta Rock Opera's video channel on the YouTube website." Opp. at 8. But that does not make YouTube's generic statement a reference to Plaintiffs that could support a libel claim for several reasons. *First*, Plaintiffs offer no evidence

DEFS.' OPP. TO MOTION FOR SUMMARY JUDGMENT -11-
CASE NO. 3:14-CV-05080-SC

about what contextual information appeared on the page containing the removal notice. There is nothing in the record to suggest that any of the Plaintiffs was identified by as the uploader, creator, or star of the video in proximity to the notice of removal. *Second*, even if the removal notice was posted "on the Rasta Rock Opera's video channel," that would only be pertinent to Plaintiff Rasta Rock, Inc.'s claims. It could not satisfy the "of and concerning" requirement with respect to Plaintiffs Song fi, Inc., Joseph Brotherton and "N.G.B." Viewers would have no reason to suspect that those persons were in any way involved in the video. *See, e.g.*, *Palm Springs Tennis Club v. Rangel*, 73 Cal. App. 4th 1, 4 (1999) (corporation could not maintain libel claims based on statements directed to corporation's president, as those statements were not "of and concerning" the corporation). *Third*, there is no evidence in the record that a single viewer of the notice perceived the channel as belonging to Rasta Rock Opera. Plaintiffs have only offered speculation, but "[s]ummary judgment must be supported by 'facts as would be admissible in evidence.'" *Volterra Semiconductor Corp. v. Primarion, Inc.*, 796 F. Supp. 2d 1025, 1037 (N.D. Cal. 2011).

In short, Plaintiffs have not carried their burden of establishing that YouTube's statement referred to them personally, and they thus are not entitled to summary judgment.

**D.  The Notice of Removal Had No Defamatory Meaning**

Not all inaccurate statements are defamatory. *See, e.g.*, *Masson v. New Yorker Magazine*, 832 F. Supp. 1350, 1367 (N.D. Cal. 1993) ("Falsity and defamatory meaning are analytically separate . . . Not all false statements are defamatory"). To constitute defamation, the statement must also expose the plaintiff "to hatred, contempt, ridicule, or obloquy," cause him "to be shunned or avoided," or have a "tendency to injure him in his occupation." Cal. Civ. Code § 45. Here, even if the statement were to be read to suggest that the material in Plaintiffs' video (rather than the associated view count) violated YouTube Terms of Service, the statement still would have no defamatory meaning and Plaintiffs' claim still would fail.

Even on Plaintiffs' reading of the statement, it suggests (at most) that the Terms of Service Agreement was violated, *i.e.*, that there was a breach of contract. There is nothing illegal, unusual, or inherently unscrupulous about a breach of contract, and it is well-settled that the mere assertion that a contract was breached is not defamatory. *See, e.g. Lincoln Nat'l Life Ins.*

*Co. v. Silver*, No. 86-cv-7175, 1991 U.S. Dist. LEXIS 13857, at *22 (N.D. Ill. Oct. 1, 1991) (statement that plaintiff had breached agreement was not actionable as "it is neither criminal nor morally reprehensible to breach a contract or to be in charge of an entity that has breached a contract."); *Woods v. Prot. One Alarm Monitoring, Inc.*, 628 F. Supp. 2d 1173, 1188 (E.D. Cal. 2007) ("A mere allegation of not paying debts is not defamatory per se.") (citing *Gautier v. Gen. Tel. Co.*, 234 Cal. App. 2d 302, 209 (1965)). *Cf. Huynh v. Vu*, 111 Cal. App. 4th 1183, 1198-99 (2003) ("the right of a contracting party to breach a contract . . . instead of being required by law to perform, has driven legal economists to extol the principle of efficient breach of contract as '[o]ne of the most enlightening insights of law and economics'").

Plaintiffs argue that the removal notice had a defamatory meaning because viewers understood it to mean that the video contained "pornography or pictures of animal cruelty or dead people." MSJ at 9. This is bizarre leap of logic, totally unsupported by the record. Plaintiffs provide no evidence that any viewer of the removal notice actually interpreted the statement in that way. Indeed, the YouTube Terms of Service Agreement prohibits a range of activities, many of which would not conceivably expose Plaintiffs to hatred or obloquy. *See, e.g.*, Hushion Decl., Ex. 1 ¶ 7.B (prohibiting videos of excessive length); ¶ 4.D (prohibiting videos that contain advertisements). Plaintiffs offer no reason why someone reading the statement would have concluded that the removed video contained pornography or animal cruelty, as opposed to having been removed for one of these other, far more mundane violations. The same is true for Plaintiffs' suggestion that the removal notice told the public that the "Luv Ya" video contained content "highly objectionable to public standards." Opp. at 9. The notice merely stated that one of the *private* restrictions YouTube places on users had been violated. YouTube did not state that the video was "highly objectionable" or that it violated "public standards." Plaintiffs' artificial and entirely unsubstantiated claims of defamatory meaning cannot be the basis for a grant of summary judgment. *See USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 909 (N.D. Cal. 2010) (defamation claim unsubstantiated where plaintiff "presented no evidence suggesting that readers had any clue to [statement's] meaning").

### E. YouTube Did Not Act With The Intent Required For A Defamation Claim

To prevail on a claim for libel, the plaintiff must also prove not only that the statement was false and defamatory, but that the defendant acted with the requisite state-of-mind. In the case of a plaintiff who is a public figure or limited-purpose public figures, the standard is actual malice, which must be proven with clear and convincing evidence. *Christian Research Institute*, 148 Cal. App. 4th 71, 81 (2007). If the plaintiff is a private figure, it must prove that the defendant was at least negligent with respect to the truth or falsity of the statement. *See, e.g.*, *Mt. Hood Polaris, Inc. v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009); *Carney v. Santa Cruz Women Against Rape*, 221 Cal. App. 3d 1009, 1013 (1990). Moreover, the plaintiff must establish that the speaker "intended to convey a defamatory impression." *Thomas v. L.A. Times Commc'ns LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002); *see also Masson*, 832 F. Supp. at 1363 (speaker's "awareness of defamatory meaning is an element of defamation").

Plaintiffs here have not come close to satisfying this requirement of their libel claim. Indeed, Plaintiffs totally ignore this element except to say that "there is no question that the publication of the Content Statement by Defendants was an intentional act." MSJ at 8. That misses the point. The question is not whether YouTube intentionally posted the statement, but whether YouTube should have known (or intended) that the statement was false and defamatory. Plaintiffs adduce not a shred of evidence to show that YouTube had such awareness. There is nothing in the record to suggest that YouTube did not actually and reasonably believe that its statement was true or that it was aware that it would convey a defamatory meaning. To the contrary, the undisputed evidence shows that YouTube posted its removal notice after correctly concluding that Plaintiffs' video was associated with view-count manipulation and that such manipulation meant that the "content" of the video violated YouTube's Terms of Service. Hushion Decl. ¶¶ 8-10. YouTube's conclusions in that regard were consistent with the court's decision in the Lewis case, which had expressly interpreted the term "content" in the YouTube Agreement to mean more than just the videos on YouTube. *See* Section III.A, *supra*. These facts belie any suggestion that YouTube was negligent with respect to the truth of what it said—much less that it intended to defame Plaintiffs. *Cf. Ions v. Harbison*, 112 Cal. 260, 269 (1896) ("it

would be going far to say that he was guilty of negligence in relying upon what laymen would ordinarily regard as a judicial determination").

## CONCLUSION

For these reasons, the Court should deny or defer consideration of Plaintiffs' Motion for Partial Summary Judgment.

DATED: March 23, 2015

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
David H. Kramer

*Attorneys for Defendants*