**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONG FI INC., JOSEPH N. BROTHERTON, LISA M. PELLEGRINO, N.G.B., a minor, RASTA ROCK, INC., D/B/A "THE RASTA ROCK OPERA," | ) Case No. 14-5080 SC<br>)<br>) ORDER GRANTING MOTION TO<br>) DISMISS AND DENYING MOTION<br>) FOR PARTIAL SUMMARY |
| Plaintiffs, | ) <u>JUDGMENT</u><br>) |
| v. | )<br>) |
| GOOGLE, INC., YOUTUBE LLC, | )<br>) |
| Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |

I.    **INTRODUCTION**

This case concerns the removal and relocation of a music

video, "Luv ya Luv ya Luv ya" (or simply "Luv ya"), on Defendant

YouTube's[1] video-sharing website.  Plaintiffs Song fi, Inc., a

music production company, N.G.B., a six-year old boy, his parents,

Joseph Brotherton and Lisa Pellegrino, and the Rasta Rock Opera, a

---

[1] YouTube is a wholly-owned subsidiary of Defendant Google.  FAC ¶
7.  Nevertheless, these motions concern only YouTube's conduct, its
video-sharing service, and terms of service.  Thus, for clarity the
Court treats this motion as if there were only one defendant,
YouTube.

music group, worked together to conceive, record, and produce "Luv ya," and post it on YouTube.  Plaintiffs allege that when YouTube removed its video, because (at least according to a notice posted in the video's place) its "content violated YouTube's Terms of Service," YouTube violated consumer protection laws, breached express or implied contracts, and committed both libel and tortious interference.  See ECF No. 13 ("FAC" or "Complaint") at ¶ 34.

Now before the Court are several potentially dispositive motions.  First, YouTube moves to dismiss the Complaint, arguing Plaintiffs' claims are barred by the Communications Decency Act, 47 U.S.C. Section 230(c)(2)(A), or contract.  ECF No. 26 ("MTD"). Plaintiffs oppose the motion to dismiss, ECF No. 37 ("MTD Opp'n"), and have moved for partial summary judgment in their own right, arguing the Court should find as a matter of law that YouTube's notice was libel per se.  ECF No. 32 ("MSJ").  Both motions are fully briefed and appropriate for resolution without oral argument under Civil Local Rule 7-1(b).  ECF Nos. 38 ("MTD Reply"), 41 ("MSJ Opp'n"), 48 ("MSJ Reply").  For the reasons set forth below, YouTube's motion to dismiss is GRANTED while Plaintiffs' motion for partial summary judgment is DENIED.

II.  **BACKGROUND**

"Luv ya" is a music video by the Rasta Rock Opera featuring the dramatized tale of a five-year-old boy (played by Plaintiff N.G.B.) and five-year-old girl who dress up and go to a restaurant for lunch on Valentine's Day.  As the children eat their lunch, a guitarist and a trumpet player (played by Plaintiff Joseph Brotherton, N.G.B.'s father and the president of both Song fi and

**United States District Court**
For the Northern District of California

Rasta Rock Opera) serenade them.  Song fi produced "Luv ya" and uploaded it to YouTube, in the process agreeing to YouTube's Terms of Service.  Since YouTube removed "Luv ya" and later relocated it to a currently-private location on Song fi's user profile, the video is no longer publicly accessible on YouTube.  Nevertheless, the video is still available on Song fi's website.  See The Rasta Rock Opera, Luv ya Luv ya Luv ya, Song fi, http://songfi.com/beta/wp-content/uploads/2015/03/Luv-ya-Luv-ya-Luv-ya.mp4.

YouTube maintains a view count, visible to users next to each video, for all videos accessible on its site.  The view count reflects "the number of times YouTube believes users . . . legitimately requested to view the video."  ECF No. 41-1 ("Second Hushion Decl.") at ¶ 7.  However, in an effort to make their videos appear more popular than they actually are, some users or promoters artificially inflate their view counts by using "'robots,' 'spiders,' or 'offline readers,' that access [a video] in a manner that sends more request messages to YouTube servers in a given period of time than a human can reasonably produce in the same period by using a conventional on-line web browser."  See ECF No. 8-3 ("First Hushion Decl.") at Ex. 1 ("Terms of Service") § 4(h).[2] In an effort to maintain the legitimacy of its view counts, YouTube's Terms of Service, to which all users must agree in order to post videos, prohibit the use of such methods.  See id. The Terms of Service also incorporate by reference YouTube's Community

---

[2] YouTube's Terms of Service are incorporated by reference in the Complaint, see, e.g., FAC ¶¶ 15, 26-27, 35, and thus are appropriately considered on a motion to dismiss.  See In re Calpine Corp. Sec. Litig., 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Guidelines, which prohibit, among other things, uploading videos

2   with pornographic, obscene, or otherwise objectionable content.

3       During the two months after Song fi posted "Luv ya," the

4   video's view count rose to over 23,000, the link to the video was

5   posted on Song fi's and Rasta Rock's social media pages, and the

6   video was featured in various promotions.  But, two months after

7   "Luv ya" was first posted, YouTube pulled the plug, removing the

8   video from its website and posting in its place a notice that

9   "[t]his video has been removed because its content violated

10  YouTube's Terms of Service."  See FAC ¶ 34. Subsequently, YouTube

11  reposted the video to a new location (currently private) without

12  its view count, "likes," or comments.  Plaintiffs protested, and

13  YouTube later explained that it removed the video because it

14  determined the view count for "Luv ya" was inflated through

15  automated means, and thus violated its Terms of Service.  Id. at ¶

16  37.  Plaintiffs deny any involvement in any view count inflation,

17  and allege that the removal and relocation of the video as well as

18  the notice's statement that the video's "content" violated the

19  Terms of Service harmed Song fi's business and efforts to obtain

20  funding, caused Nike to cancel a performance by the Rasta Rock

21  Opera, and personally injured N.G.B. and his father.

22      As a result, Plaintiffs brought suit, initially in the United

23  States District Court for the District of Columbia.  See ECF No. 1.

24  The case was transferred to this District after Judge Collyer

25  granted a motion to transfer under Federal Rule of Civil Procedure

26  12(b)(3) pursuant to the forum selection clause in YouTube's Terms

27  of Service.  See ECF No. 19 ("Transfer Order").  Now in this, the

28  contractually selected venue, YouTube has filed a motion to dismiss

1  and Plaintiffs a motion for partial summary judgment, seeking to
2  resolve all or part of Plaintiffs' claims.

3

4  **III.  LEGAL STANDARDS**

5      **A.    Federal Rule of Civil Procedure 12(b)(6)**

6      A motion to dismiss under Federal Rule of Civil Procedure
7  12(b)(6) "tests the legal sufficiency of a claim." Navarro v.
8  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based
9  on the lack of a cognizable legal theory or the absence of
10 sufficient facts alleged under a cognizable legal theory."
11 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
12 1988).  "When there are well-pleaded factual allegations, a court
13 should assume their veracity and then determine whether they
14 plausibly give rise to an entitlement to relief." Ashcroft v.
15 Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
16 must accept as true all of the allegations contained in a complaint
17 is inapplicable to legal conclusions.  Threadbare recitals of the
18 elements of a cause of action, supported by mere conclusory
19 statements, do not suffice." Id. (citing Bell Atl. Corp. v.
20 Twombly, 550 U.S. 544, 555 (2007)).  The allegations made in a
21 complaint must be both "sufficiently detailed to give fair notice
22 to the opposing party of the nature of the claim so that the party
23 may effectively defend against it" and "sufficiently plausible"
24 such that "it is not unfair to require the opposing party to be
25 subjected to the expense of discovery." Starr v. Baca, 652 F.3d
26 1202, 1216 (9th Cir. 2011).
27 ///
28 ///

United States District Court
For the Northern District of California

5

**United States District Court**
For the Northern District of California

### B.   **Federal Rule of Civil Procedure 56**

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

## IV.   **DISCUSSION**

The Court addresses YouTube's motion to dismiss first, before turning to Plaintiffs' motion for partial summary judgment.

### A.   **Motion to Dismiss**

Plaintiffs' Complaint alleges five causes of action: (1) libel, (2) breach of express contract, (3) breach of implied contract, (4) tortious interference, and (5) violations of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code Section 28-3904.

YouTube argues it has statutory immunity from the breach claims under the Communications Decency Act, 47 U.S.C. Section 230(c)(2)(A). Furthermore, even if it is not immunized, YouTube contends these claims fail because it was authorized to relocate the video by its Terms of Service. Similarly, YouTube argues the claims stemming from its notice fail because the notice is true,

1   Plaintiffs have inadequately pleaded various elements of their

2   tortious interference claims, and the CPPA claims should be

3   dismissed because the Terms of Service provide that California law

4   governs.

5        The Court will address the statutory immunity argument first

6   before turning to the contract and implied contract claims, libel,

7   tortious interference, and finally, CPPA claims.

8              **1.   Communications Decency Act Section 230(c)**

9        As a threshold matter, YouTube argues it is entitled to

10  statutory immunity from Plaintiffs' breach of contract and tortious

11  interference claims because "Luv ya" and its allegedly artificially

12  inflated view count are "otherwise objectionable" within the

13  meaning of Section 230(c)(2) of the Communications Decency Act.

14  See 47 U.S.C. § 230(c)(2).  However, because the Court finds

15  neither the plain meaning of "otherwise objectionable" nor the

16  context, purpose, or history of the Communications Decency Act

17  support YouTube's interpretation of "otherwise objectionable,"

18  YouTube is not entitled to statutory immunity from Plaintiffs'

19  breach of contract or tortious interference claims.

20       Section 230(c), entitled "Protection for 'Good Samaritan'

21  blocking and screening of offensive material" states that:

22              No provider or user of an interactive computer
            service shall be held liable on account of --
23

24              (A)  any action voluntarily taken in good
                 faith to restrict access to or
25               availability of material that the
                 provider considers to be obscene,
                 lewd, lascivious, filthy, excessively
26               violent, harassing, or otherwise
                 objectionable, whether or not such
27               material is constitutionally
                 protected . . . .
28

7

**United States District Court**
For the Northern District of California

1   *Id.*  This language provides "a 'robust' immunity," Carafano v.

2   Metrosplash.com, Inc., 339 F.3d 1119, 1123 (9th Cir. 2003), and the

3   Ninth Circuit has counseled that all doubts should be resolved in

4   favor of immunity.  Fair Housing Council v. Roommates.com, LLC, 521

5   F.3d 1157, 1174 (9th Cir. 2008).

6        When interpreting a statute, the Court must give words "their

7   'ordinary or natural' meaning."  See United States v. TRW Rifle

8   7.62X51mm Caliber, One Model 14 Serial 593006, 447 F.3d 686, 689

9   (9th Cir. 2006) (quoting Leocal v. Ashcroft, 543 U.S. 1, 8-9

10  (2004)).  Because Congress did not define the phrase "otherwise

11  objectionable," the Court "'follow[s] the common practice of

12  consulting dictionary definitions to clarify [its] original

13  meaning[]' and look to how the terms were used 'at the time [the

14  Communications Decency Act] was adopted.'"  Id. (quoting United

15  States v. Carter, 421 F.3d 909, 911 (9th Cir. 2005).  The

16  dictionary definition of the term "objectionable" at the time

17  Congress enacted the Communications Decency Act was "undesirable,

18  offensive."  Webster's Ninth New Collegiate Dictionary 814 (9th ed.

19  1984).

20       Nevertheless, meaning is not determined in the abstract, and

21  the Court must look to whether these definitions are consistent

22  with the context of the Communications Decency Act.  See TRW Rifle,

23  447 F.3d at 690; see also Pac. Gas & Elec. Co. v. G.W. Thomas

24  Drayage & Rigging Co., 442 P.2d 641 (Cal. 1968) (Traynor, J.) ("The

25  meaning of particular groups of words varies with the verbal

26  context and surrounding circumstances . . . .  A word has no

27  meaning apart from these factors; much less does it have an

28  objective meaning, one true meaning.") (internal quotation marks

**United States District Court**
For the Northern District of California

and alterations omitted).  Here, the context provides additional evidence Congress did not intended "otherwise objectionable" to refer to (as YouTube believes) anything which it finds undesirable for any reason.

First, when a statute provides a list of examples followed by a catchall term (or "residual clause") like "otherwise objectionable," the preceding list provides a clue as to what the drafters intended the catchall provision to mean.  See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115 (2001).  This is the rationale for the canon of construction known as eiusdem generis (often misspelled ejusdem generis), which is Latin for "of the same kind."  See United States v. Taylor, 620 F.3d 812, 814 (7th Cir. 2010) (Posner, J.); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199-213 (2012) (discussing this canon at length).  Given the list preceding "otherwise objectionable," -- "obscene, lewd, lascivious, filthy, excessively violent, [and] harassing . . ." -- it is hard to imagine that the phrase includes, as YouTube urges, the allegedly artificially inflated view count associated with "Luv ya."  On the contrary, even if the Court can "see why artificially inflated view counts would be a problem for . . . YouTube and its users," MTD Reply at 3, the terms preceding "otherwise objectionable" suggest Congress did not intend to immunize YouTube from liability for removing materials from its website simply because those materials pose a "problem" for YouTube.  See Goddard v. Google, Inc., No. C 08-2738 JF (PVT), 2008 WL 5245490, at *6 (N.D. Cal. Dec. 17, 2008) (finding that information "relat[ing] to business norms of fair play and transparency are . . . beyond the scope of § 230(c)(2)");

United States District Court
For the Northern District of California

Nat'l Numismatic Cert., LLC v. eBay, Inc., No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *25 (M.D. Fla. July 8, 2008) (concluding, based in part on eiusdem generis, that Congress did not intend "otherwise objectionable" to refer to auction of potentially counterfeited coins).

Similarly, both the context in which "otherwise objectionable" appears in the Communications Decency Act and the history and purpose of the Act support this reading.  Section 230 is captioned "Protection for 'Good Samaritan' blocking and screening of offensive material," yet another indication that Congress was focused on potentially offensive materials, not simply any materials undesirable to a content provider or user.  47 U.S.C. Section 230(c) (emphasis added); see Doe v. GTE Corp., 347 F.3d 655, 659-60 (7th Cir. 2003) (interpreting Section 230(c) in light of this caption); see also Fair Housing Council, 521 F.3d at 1163-64 (citing Doe and a subsequent Seventh Circuit decision discussing the caption with approval).  Second, Congress's purpose in granting immunity to content-providers and users for blocking or screening of offensive materials was (1) to eliminate liability for internet content-providers that serve as intermediaries for others' messages and (2) to eliminate disincentives for content-providers like YouTube to self-regulate by blocking or screening offensive materials.  See Zeran v. Am. Online, Inc., 129 F.3d 327, 331 (4th Cir. 1997) (discussing these purposes and a New York Supreme Court case, Stratton Oakmont, Inc. v. Prodigy Services Co., 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995), which Congress intended to supersede by adopting Section 230); see also Batzel v. Smith, 333 F.3d 1018, 1026-30 (9th Cir. 2003) (restating Congress's concerns

1    that "[i[f efforts to review and omit third-party defamation,

2    obscene or inappropriate material make a computer service provider

3    or user liable for posted speech, then website operators and

4    Internet service providers are likely to abandon efforts to

5    eliminate such material from their site.").

6         Nothing about this interpretation is inconsistent with other

7    portions of the text of Section 230(c)(2).  YouTube complains that

8    Section 230(c)(2) specifically allows service providers like

9    YouTube to restrict access to or block material "that the provider

10   or user considers to be . . . otherwise objectionable," and there

11   is no doubt it considers an inflated view count to be

12   objectionable.  47 U.S.C. § 230(c)(2) (emphasis added).  Thus,

13   YouTube concludes that "CDA immunity . . . applies regardless of

14   whether the material actually is objectionable in some objective

15   way, and regardless of whether anyone other than the service

16   provider might consider it objectionable."  Reply at 3.  But the

17   fact that the statute requires the user or service provider to

18   subjectively believe the blocked or screened material is

19   objectionable does not mean anything or everything YouTube finds

20   subjectively objectionable is within the scope of Section 230(c).

21   On the contrary, Judge Fisher on the Ninth Circuit expressed

22   concern that such an "unbounded" reading of "otherwise

23   objectionable" would enable content providers to "block content for

24   anticompetitive purposes or merely at its malicious whim, under the

25   cover of considering such material 'otherwise objectionable.'"  See

26   Zango, Inc. v. Kaspersky Lab, Inc., 568 F.3d 1169, 1178 (9th Cir.

27   2009) (Fisher, J., concurring).

28        While the Court does not believe YouTube's decision to remove

United States District Court
For the Northern District of California

and relocate "Luv ya" was malicious or anticompetitive, the Court also does not believe the removal and relocation of "Luv ya" was the kind of self-regulatory editing and screening that Congress intended to immunize in adopting Section 230(c).  Thus, the Court declines to adopt YouTube's completely subjective (and entirely unbounded) reading of these provisions.  On the contrary, the ordinary meaning of "otherwise objectionable," as well as the context, history, and purpose of the Communications Decency Act all counsel against reading "otherwise objectionable" to mean anything to which a content provider objects regardless of why it is objectionable.[3]  See also Sherman v. Yahoo! Inc., 997 F. Supp. 2d 1129, 1138 (S.D. Cal. 2014) ("The Court declines to broadly interpret 'otherwise objectionable' material to include any or all information or content.").  Because the allegedly inflated view count associated with "Luv ya" is not "otherwise objectionable" within the meaning of Section 230(c)(2), YouTube is not entitled to immunity from Plaintiffs' contract or tortious interference claims.

**2.   Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

Although YouTube is not entitled to immunity from Plaintiffs' claims based on the relocation of "Luv ya," it nonetheless argues

---

[3] While YouTube cites several cases concluding efforts to block or filter "spam" emails were immunized from liability because spam is "otherwise objectionable," these authorities are distinguishable. A content provider or user could easily conclude that spam emails are "harassing" within the meaning of the Act or are similar enough to harassment as to fall within the catchall "otherwise objectionable."  See Holomaxx Techs. v. Microsoft Corp., 783 F. Supp. 2d 1097, 1104 (N.D. Cal. 2011); e360Insight, LLC v. Comcast Corp., 546 F. Supp. 2d 605, 607-08 (N.D. Ill. 2008).  Unlike spam, however, the text, context, history, and purposes of the Communications Decency Act do not support reading "otherwise objectionable" to encompass the allegedly inflated view count associated with "Luv ya."

**United States District Court**
For the Northern District of California

1  that Plaintiffs' contract claims fail because the Terms of Service

2  (to which all users must agree to post a video) authorize it to

3  relocate or remove videos in its sole discretion.  While the Court

4  believes (as did Judge Collyer, who handled the case while it was

5  venued in Washington, D.C.) that YouTube's Terms of Service are

6  inartfully drafted, YouTube is correct.  The Terms of Service

7  unambiguously reserve to YouTube the right to determine whether

8  "Content violates these Terms of Service" and, "at any time,

9  without prior notice and in its sole discretion, remove such

10  Content . . . ."  Terms of Service at § 7.B; see also id. at § 2.A

11  (defining "Content").  Elsewhere, the Terms of Service also allow

12  YouTube to "discontinue any aspect of the Service at any time."

13  Id. at § 4.J; see also §§ 1.A; 2.A (defining "Service").  Thus,

14  whether "Luv ya" and the associated view count are deemed aspects

15  of YouTube's "Service" or are "Content" within the meaning of the

16  Terms of Service (an issue to which the parties devote significant

17  attention) is immaterial.  Either way, the Terms of Service

18  permitted YouTube to remove "Luv ya" and eliminate its view count,

19  likes, and comments.

20      As a result, Plaintiffs cannot state a claim for breach of the

21  Terms of Service in removing the video, because conduct authorized

22  by a contract cannot give rise to a claim for breach of the

23  agreement.  See Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.,

24  826 P.2d 710, 728 (Cal. 1992); see also FAC ¶ 62.  Similarly,

25  Plaintiffs cannot state a claim for breach of the implied covenant

26  of good faith and fair dealing, because "if defendants were given

27  the right to do what they did by the express provisions of the

28  contract there can be no breach."  Carma, 826 P.2d at 728 (citing

**United States District Court**
For the Northern District of California

1  VTR, Inc. v. Goodyear Tire & Rubber Co., 303 F. Supp. 773, 777-78

2  (S.D.N.Y. 1969)).  Further, to the extent Plaintiffs allege that

3  the relocation (as opposed to the removal) of the video is the

4  source of a cause of action for breach of contract or breach of the

5  implied covenant, those claims fail under the agreement as well

6  because the specific location of a video is an aspect of YouTube's

7  "Service" that it retains the right to discontinue at any time.

8  See Terms of Service at §§ 1.A; 2.A; 4.J.

9      Accordingly, YouTube's motion to dismiss Plaintiffs' claims

10  for breach of contract and breach of the implied covenant of good

11  faith and fair dealing is GRANTED.  Furthermore, because the Court

12  finds YouTube's Terms of Service unambiguously foreclose these

13  claims, granting leave to amend would be futile.  See Foman v.

14  Davis, 371 U.S. 178, 182 (1962).  As a result, these claims are

15  DISMISSED WITH PREJUDICE.

16          **3.    Libel**

17      Even if YouTube had the authority to relocate or remove

18  Plaintiffs' video, Plaintiffs allege that the statement YouTube

19  posted after removing "Luv ya" was libelous.  After removing the

20  video, YouTube posted a notice in its place stating that "[t]his

21  video has been removed because its content violated YouTube's

22  Terms of Service."  FAC at ¶ 34.

23      YouTube argues because this statement is true, Plaintiffs

24  cannot state a claim for libel.  See Melaleuca, Inc. v. Clark, 66

25  Cal. App. 4th 1344, 1353 (Cal. Ct. App. 1998) ("An essential

26  element of libel . . . is that the publication in question must

27  contain a false statement of fact . . . .") (emphasis in

28  original).  The Court must assess the truth or falsity of

1  YouTube's notice "according to natural and popular construction

2  [of the notice] . . . not so much by its effect when subjected to

3  the critical analysis of a mind trained in the law, but by the

4  natural and probable effect upon the mind of the average reader."

5  Id. at 1353-54 (internal citations and quotation marks omitted).

6      In arguing that the notice it posted was true and thus not

7  actionable, YouTube argues that "content" in its notice has the

8  same meaning as "Content" in its Terms of Service.  Thus, "[t]o

9  understand what that meant, a visitor would have to read through

10 the Agreement and would recognize that YouTube merely determined

11 that the 'Content' violated one of the numerous prohibitions in

12 YouTube's governing documents, most of which have nothing to do

13 with violence or obscenity."  Mot. at 15.  If the Court's task was

14 to apply "the critical analysis of a mind trained in the law" to

15 the meaning of the allegedly defamatory notice, that argument

16 might hold water.  See Melaleuca, 66 Cal. App. 4th at 1353-54.

17 However, the Court must assess the notice from the perspective of

18 an average reader.  While the average reader encountering this

19 notice might refer to the Terms of Service to determine what sorts

20 of things "violate[] the Terms of Service," an average reader

21 would not refer to the Terms of Service for a definition of

22 "content" because "content" is a word in common use with a plain

23 and ordinary meaning.

24     Furthermore, even if the Court were to conclude an average

25 reader would regard "content" as having the same meaning in both

26 the Terms of Service and the notice posted in place of "Luv ya,"

27 it is by no means certain that the view count associated with "Luv

28 ya" even falls within the Terms of Service's definition of

**United States District Court**
For the Northern District of California

1  "Content." Compare Terms of Service § 1.A (defining "Service" to
2  include "YouTube products . . . and services provided to you on,
3  from, or through the YouTube Website"), and id. at § 2.A (defining
4  "Service" as including "all aspects of YouTube, including but not
5  limited to all . . . services offered via the YouTube website"),
6  with id. at § 2.A (defining "Content" to include "text, . . .
7  interactive features and other materials you may view on, access
8  through, or contribute" to YouTube). Thus, while the Court need
9  not decide today whether "Content" under the Terms of Service
10  encompasses the view count associated with each video, at least
11  one potential interpretation of the Terms would classify the view
12  count as part of the "Service," not "Content." See ECF No. 12
13  ("Hr'g Tr.") at 36:02-36:10.

14      Despite the shortcomings of this argument, as discussed more
15  fully below, the Court finds that YouTube's allegedly libelous
16  statement is not libelous on its face (or "libel per se").
17  Instead, to the extent Plaintiffs have an actionable libel claim it
18  is a claim for libel per quod. See Cal. Civ. Code § 45a
19  (distinguishing between "libel on its face" and "[d]efamatory
20  language not libelous on its face"); see also Palm Springs Tennis
21  Club v. Rangel, 73 Cal. App. 4th 1, 5-6 (Cal. Ct. App. 1999) ("If a
22  defamatory meaning appears from the language itself without the
23  necessity of explanation or the pleading of extrinsic facts, there
24  is libel per se," however, "[i]f . . . the defamatory meaning would
25  appear only to readers who might be able to recognize it through
26  some knowledge of specific facts . . . not discernable from the
27  face of the publication, . . . then the libel cannot be libel per
28  se but will be libel per quod.") (citation omitted). Claims for

United States District Court
For the Northern District of California

1  libel per quod require a plaintiff to plead that he suffered

2  "special damages."  Cal. Civ. Code § 45a ("Defamatory language not

3  libelous on its face is not actionable unless the plaintiff alleges

4  and proves that he has suffered special damages as a proximate

5  result thereof."); Newcombe v. Adolf Coors Co., 157 F.3d 686, 695

6  (9th Cir. 1998); see also Cal. Civ. Code § 48a(4)(b) (defining

7  "special damages").

8      Because Plaintiffs have not pleaded special damages, their

9  libel claims are DISMISSED.  Leave to amend as to the libel claim

10 is GRANTED.

11           **4.   Tortious Interference**

12     Next, Plaintiffs allege that YouTube tortiously interfered

13 with Song fi and Rasta Rock's business relationships when it

14 removed and relocated "Luv ya" and posted the notice stating its

15 content violated YouTube's Terms of Service.  Specifically,

16 Plaintiffs allege that Rasta Rock and Song fi featured "Luv ya" in

17 its attempt "to secure a sponsorship by Nike, an international

18 footwear company, of a July 4, 2014 performance of the 'Star

19 Spangled Banner'" at Nike's store in Washington, D.C.  FAC ¶ 49.

20 While Nike gave "preliminary approval for the event," and Song fi

21 spent substantial amounts preparing for the event, the event was

22 cancelled after Nike discovered that YouTube removed "Luv ya" and

23 posted the notice that its content violated YouTube's terms of

24 service.[4]  Id.  In addition, Plaintiffs allege that Song fi's

25

26 [4] YouTube's argument that "Plaintiffs do not identify any specific
   relationships that were allegedly disrupted," Mot. at 16,
27 particularly just one sentence after citing these precise
   allegations, is risible.  At the same time, YouTube is correct that
28 the references to Song fi's principal funder are vague.  Plaintiffs
   should provide greater detail in any amended complaint.

**United States District Court**
For the Northern District of California

1   principal funder suspended financial support for the company after

2   "Luv ya" was removed from YouTube.  Id. at ¶ 50.

3       Under California law, a claim for tortious interference

4   requires: "(1) an economic relationship between the plaintiff and

5   some third party, with the probability of future economic benefit

6   to the plaintiff; (2) defendant's knowledge of the relationship;

7   (3) intentional acts on the part of the defendant designed to

8   disrupt the relationship; (4) actual disruption of the

9   relationship; and (5) economic harm proximately caused by the acts

10  of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 63

11  P.3d 937, 950 (Cal. 2003).  Plaintiffs must also show that

12  YouTube's conduct was "wrongful by some legal measure other than

13  the fact of interference itself." Della Penna v. Toyota Motor

14  Sales, U.S.A., Inc., 902 P.2d 740, 746 (Cal. 1995) (citation and

15  emphasis omitted).

16      YouTube's chief objections to Plaintiffs' tortious

17  interference allegations are (1) the absence of allegations of its

18  knowledge of Plaintiffs' alleged economic relationship with Nike or

19  Song fi's unnamed funder, and (2) the lack of alleged intentional

20  acts designed to disrupt that relationship.  However, Plaintiffs do

21  allege that YouTube was notified "on May 12, 2014 that its action

22  of removing the "Luv Ya" video and leaving instead a message that

23  the video had been removed because of its content was interfering

24  with Song fi and the Rasta Rock Opera's business relationships."

25  FAC ¶ 77.  YouTube argues that because (by Plaintiffs' own

26  admission) it did not have knowledge of Plaintiffs' prospective

27  agreement with Nike at the time it posted the allegedly defamatory

28  notice, it cannot be liable for tortious interference.  However,

**United States District Court**
For the Northern District of California

1    Plaintiffs allege that YouTube refused to remove the notice stating

2    that the content of "Luv ya" violated the Terms of Service even

3    after Plaintiffs informed them that the notice was interfering with

4    their business relationships.  See id. at ¶ 78.  Taking Plaintiffs'

5    allegations as true (as the Court must for the purposes of this

6    motion), these allegations are sufficient to satisfy the knowledge

7    and intentional act requirements.

8         However, to allege a claim for tortious interference,

9    Plaintiffs must also allege that YouTube's conduct was "wrongful"

10   apart from the tortious interference itself.  See Della Penna, 902

11   P.2d at 746.  Were Plaintiffs able to state a claim for libel, for

12   instance, that would satisfy this standard.  However, because the

13   Court finds Plaintiffs have not stated a claim on any of their

14   other legal theories, Plaintiffs' tortious interference claims are

15   also DISMISSED.  Leave to amend to plead "wrongful" conduct apart

16   from the alleged tortious interference itself is GRANTED.

17        **5g.   CPPA Claims**

18        Finally, Plaintiffs allege that YouTube's notice is actionable

19   under the D.C. Consumer Protection Procedures Act ("CPPA").  See

20   D.C. Code S 28-3901.  However, as YouTube points out, the Terms of

21   Service provides that California law governs the parties' dispute.

22   See Terms of Service Section 14.  Pointing to cases dismissing

23   similar non-California consumer protection claims based on similar

24   provisions, YouTube argues Plaintiffs' CPPA claims should be

25   dismissed.  See Cannon v. Wells Fargo Bank, N.A., 917 F. Supp. 2d

26   1025, 1055 (N.D. Cal. 2013) (dismissing a California UCL claim

27   because the parties' mortgage agreement chose Florida law);

28   Armstrong v. Accrediting Council for Continuing Educ. & Training,

1   980 F. Supp. 53, 59-60 (D.D.C. 1997) (dismissing a CPPA claim

2   because the choice-of-law clause in the parties' agreement selected

3   California law).

4        Plaintiffs did not respond to YouTube's argument, and thus the

5   Court need not address it.  See Stichting Pensioenfonds ABP v.

6   Countrywide Fin. Corp., 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)

7   ("[I]n most circumstances, failure to respond in an opposition

8   brief to an argument put forward in an opening brief constitutes

9   waiver or abandonment in regard to the uncontested issue.")

10  (internal quotation marks omitted).  Accordingly, YouTube's motion

11  is GRANTED and these claims are DISMISSED.  To the extent

12  Plaintiffs wish to plead a similar California consumer protection

13  claim, leave to amend is GRANTED.

14       **B.   Motion for Summary Judgment**

15       Finally, Plaintiffs have moved for partial summary judgment on

16  the grounds that YouTube's notice that "[t]his video has been

17  removed because its content violated YouTube's Terms of Service" is

18  libel per se.

19       A statement is libel per se if "a defamatory meaning appears

20  from the language itself without the necessity of explanation or

21  the pleading of extrinsic facts . . . ."  Palm Springs Tennis Club

22  v. Rangel, 73 Cal. App. 4th 1, 5 (Cal. Ct. App. 1999) (citation

23  omitted); see also Cal. Civ. Code § 45a.  However, if the

24  defamatory meaning of the statement is only clear through "some

25  knowledge of specific facts and/or circumstances, not discernable

26  from the face of the publication, and which are not matters of

27  common knowledge rationally attributable to all reasonable persons,

28  then libel cannot be libel per se but will be libel per quod."

**United States District Court**
For the Northern District of California

1    <u>Palm Springs</u>, 73 Cal. App. 4th at 5 (citation omitted).

2         To the extent Plaintiffs have an actionable claim for libel it

3    is for libel <u>per quod</u>, not libel per se.  Plaintiffs' Complaint

4    states that YouTube's Terms of Service (and its Community

5    Guidelines, which are incorporated in the Terms of Service by

6    reference) "list as content violations such things as pornography,

7    sexually explicit content, child abuse, animal abuse, drug abuse,

8    under-age drinking and smoking, and bomb making," and the Terms of

9    Service directly references "pornography and obscenity, among other

10   things, as prohibited Content."  FAC ¶ 35.  Plaintiffs allege that

11   YouTube's notice "was defamatory because it gave the impression to

12   the reasonable average viewer that Plaintiffs' Content in the video

13   had been pornographic or otherwise beyond the bounds of

14   decency . . ." when is neither pornographic nor indecent.  <u>Id.</u> at ¶

15   70.  However, the only way the reference to "content" in YouTube's

16   notice could give that impression is if the average viewer knew

17   that pornography and obscenity, among other things, were prohibited

18   by YouTube's Terms of Service.  After all, nothing in the notice

19   itself makes reference to any particular type of content at all.

20   Thus, YouTube's notice is not libel per se.  <u>See</u> <u>Newcombe v. Adolf</u>

21   <u>Coors Co.</u>, 157 F.3d 686, 695 (9th Cir. 1998).  Furthermore, while

22   YouTube's service may be a ubiquitous part of contemporary culture,

23   its Terms of Service and their prohibitions are not "matters of

24   common knowledge rationally attributable to all reasonable

25   persons . . . ."  <u>Palm Springs</u>, 73 Cal. App. 4th at 5.

26        As a result, Plaintiffs' motion for partial summary judgment

27   is DENIED.  Because the Court finds that YouTube is able to present

28   all the facts "essential to justify its opposition . . ." to

**United States District Court**
For the Northern District of California

Plaintiffs' motion, YouTube's request for discovery prior to addressing this motion under Federal Rule of Civil Procedure 56(d) is DENIED.

**V.    CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED and leave to amend is GRANTED in part.  Plaintiffs' motion for partial summary judgment is DENIED.  Plaintiffs shall file any Second Amended Complaint within thirty (30) days of the signature date of this order.  Failure to file an amended complaint within the time allotted may result in dismissal with prejudice.

Dated: June 10, 2015

_____
UNITED STATES DISTRICT JUDGE