Erik L. Jackson (SBN 166010)
ejackson@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: 213.892.7900
Facsimile: 213.892.7999

Ronald F. Wick (admitted *pro hac vice*)
rwick@cozen.com
COZEN O'CONNOR
1627 I Street, N.W., Suite 1100
Washington, D.C. 20006
Telephone: 202.912.4874

Edward W. Lyle (admitted *pro hac vice*)
ewlyle@west1805.com
LAW OFFICE OF EDWARD W. LYLE
1250 Connecticut Avenue N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 333-4280

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SONG FI, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE, INC. and YOUTUBE, LLC, <br><br> Defendants. | Case No.: 3:14-CV-05080-SC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: August 14, 2015 <br> Time: 10:00 a.m. <br> Ctrm: 1 <br> Judge: Hon. Samuel Conti |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 14, 2015, at 10:00 a.m., before the Honorable Samuel Conti of the United States District Court for the Northern District of California, Courtroom 1, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Song fi, Inc., Rasta Rock, Inc., Joseph Brotherton, and N.G.B. will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 15 for an order granting Plaintiffs leave to file the proposed Second Amended Complaint attached hereto as Exhibit A.

This motion ("Motion") is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof; the accompanying proposed Second Amended Complaint; the proposed Order filed concurrently herewith; the pleadings, records and papers on file in this action; oral argument of counsel; and any other matters properly before this Court.

**STATEMENT OF ISSUES**

1. Should Plaintiffs be permitted to amend the First Amended Complaint, which this Court previously dismissed with leave to amend, not only to make the amendments previously permitted by the Court but also to assert new antitrust and fraud claims under California law?

**MEMORANDUM OF POINTS AND AUTHORITIES**

On June 10, 2015, the Court dismissed the First Amended Complaint ("FAC") filed by Plaintiffs but granted leave to amend their libel, tortious interference and consumer protection counts. In the proposed Second Amended Complaint ("SAC"), submitted herewith Exhibit A, Plaintiffs have made such amendments and now submit them to the Court.

Plaintiffs have also presented two other counts and now request the Court to permit their addition to the complaint as well. One is for fraud, and the other is an antitrust count arising under California's Cartwright Act.

**I.      EXPLANATION OF THE TWO ADDITIONAL COUNTS**

     **a.  Fraud**

The fraud count has been pleaded in light of the Court's dismissal of Plaintiffs' breach of

contract claim in the FAC, which was based on the provisions of the Terms of Service ("TOS") on the YouTube website (*www.youtube.com*). In accepting the Court's ruling on the breach claim, Plaintiffs see a policy consideration that operators of websites such as the YouTube site must have the prerogative to remove any video immediately – without having to bring in lawyers and debate whether they have the right to do so - in case something has been posted that is truly offensive to social values. This is especially true where, as in this instance, the website does not conduct a prior review of each video before allowing it to be posted.

Giving website operators this prerogative is akin to not imposing prior restraints in free speech cases. Just as in free speech cases, however, there can be after-the-fact legal consequences if what is done is done for the wrong reasons. And that is the case here.

Defendants Google, Inc. ("Google") and its wholly-owned subsidiary, YouTube, LLC ("YouTube") (collectively, "Defendants") emphasize in the Terms of Service ("TOS") for the YouTube website that use of robotic means to enhance view counts is prohibited and subjects the video to possible removal or its uploader to possible loss of privileges on the YouTube site. That is fair enough on its face, and indeed the provisions against robotic enhancement of view counts give any uploader, such as Plaintiff Song fi, Inc. ("Song fi") the impression that the YouTube site will be policed fairly against such enhancement, and that the success of each video in attracting "views" from the public will be measured fairly and impartially by the view counter that YouTube attaches to each video.

Unfortunately, that fairness and impartiality was not present in Defendants' treatment of the "LuvYa" video that Song fi posted on the YouTube site, as alleged in the FAC and the SAC. After "LuvYa" attracted approximately 23,000 views, Defendants took it down, claiming that they had detected improper robotic enhancement of the "LuvYa" view count. For the public generally, Defendants posted another rationale: i.e., that the content of "LuvYa" violated the content provisions of the TOS.

This inconsistency in Defendants' explanation reflected a more fundamental, and unlawful, basis for Defendants' action in taking down the "LuvYa" video. Far from operating a fair and

2

impartial website when it came to the view counts of uploaded videos, Defendants were – and still are – operating a website that, upon information and belief, permits the manipulation of view counts to enhance the videos uploaded by major entertainment producers while citing robotic enhancement of videos to prevent smaller producers and distributors of videos such as Song fi from fairly competing against the videos of those producers. In short, Plaintiffs allege that Defendants' policing of view counts on the YouTube website is done on a fraudulent basis, and Plaintiff Song fi and its "LuvYa" video were victims of that fraud.

If Defendants' right to remove videos from the YouTube site is to be affirmed, therefore, there should be consequences at this point for Defendants' improper actions when they removed the "LuvYa" video. Since both breach of contract and fraud counts cannot be brought for essentially the same acts or omissions, and since the Court has now dismissed Plaintiffs' breach of contract claim, Plaintiffs are now seeking to add a fraud count to their complaint to challenge Defendants' improper actions. For this reason, Plaintiffs ask that the Court to grant this request.

### b. The Cartwright Act

Plaintiffs are also requesting leave to add an antitrust count to address the anticompetitive effects that arise from Defendants' administration of view counts on the YouTube site, as briefly discussed above. Plaintiffs allege, on information and belief, that Defendants' selective enforcement of the TOS is part of an understanding or agreement with the major producers in the market for the production and distribution of entertainment videos. This overall arrangement, and the particular measures that Defendants take to implement it, constitute unlawful restraints of trade under California's Cartwright Act and should be addressed in this proceeding.

Plaintiffs' original complaint was filed under the laws of the District of Columbia, and Defendants have since prevailed in transferring the case to this Court and invoking California law. That being the case, Plaintiffs now seek leave to plead additional claims under California law, including the Cartwright Act.

## II. ANALYSIS

In considering a motion to amend, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the FAC on which the Court ruled was originally filed in the U.S. District Court for the District of Columbia, and thus did not invoke California law. Now that this action has been transferred to this Court at Defendants' behest—and dismissed, in large part, based on California law--Plaintiffs now seek to invoke California law in amending their complaint.

Granting this motion would not prejudice Plaintiffs. Plaintiffs' original complaint was amended as of right before Defendants filed any responsive pleading or motion, and Defendants then chose not to answer Plaintiffs FAC but rather to file a motion to dismiss. Defendants, therefore, have not responded formally to Plaintiffs' allegations except in seeking to have them dismissed, and thus cannot be prejudiced by the amendments Plaintiffs now seek.

As it is, Defendants were placed on notice about Plaintiffs' antitrust concerns much earlier in this proceeding through Paragraphs 28, 29 and 30 of the FAC:

> 28. On information and belief, G-Y engages in willful blindness by allowing one or more of the major record companies ("Major Labels") and their agents to engage in enhancing the view counts of videos of their artists by using the same automated means that are prohibited in the Terms of Service. The view counts for certain Major Lahels are, on information and belief, artificially increased into the millions and billions as YouTube turns a blind eye. The result is that view counts of many Major Labels and their artists are far beyond any counts that human viewing could possibly produce, while pay-for-click advertisers on the G-Y websites are thereby defrauded.
>
> 29. Currently on the YouTube website, for instance, a video by "Psy," a South Korean entertainer, has almost two billion views. A Canadian entertainer, Justin Bieber, has more than one billion views for his "Baby" video. To reach view counts like these, some type of automated enhancement is required. As this view count fraud takes place, the Major Labels benefit because their videos and other works on YouTube appear to be more popular than they actually are. Meanwhile, G-Y is billing advertisers based on robotically enhanced view counts.
>
> 30. While G-Y allows Major Labels to manipulate the view count, G-Y

removes from YouTube certain vides that have been posted by artists not signed to Major Labels ("Independent Artists"). On information and belief, G-Y takes down certain videos of Independent Artists to prevent their view counts from rising to the levels of more established artists signed to Major Labels. In effect, YouTube bullies small Independent Artists by taking down their videos wrongfully and then posting false and defamatory notices as to why the videos were taken down.

### III. CONCLUSION

The proposed SAC corrects errors noted by the Court and adds two new counts that Plaintiffs believe are both well-founded and needed to allow a fair examination of the issues presented by Defendants' conduct against the Plaintiffs. The proposed SAC is also being presented at a point in this proceeding where it would not prejudice to Defendants. For these reasons, Plaintiffs ask that the Court grant this motion and allow them to file the attached proposed Second Amended Complaint.

Respectfully submitted,

Dated: July 10, 2015                    COZEN O'CONNOR


By:   ___/s/ Ronald F. Wick_____
        Ronald F. Wick
        Attorneys for Plaintiffs