United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SONG FI, INC., JOSEPH N. BROTHERTON, LISA M. PELLEGRINO, N.G.B., RASTA ROCK, INC.,

        Plaintiffs,

   v.

GOOGLE, INC., YOUTUBE LLC,

        Defendants.

_____/

No. C 14-5080 CW

ORDER GRANTING IN PART MOTION FOR SANCTIONS

(Docket Nos. 114 and 123)

Defendants Google, Inc. and YouTube LLC move for sanctions against Plaintiffs' counsel under Federal Rule of Civil Procedure 11 for allegations made in the Third Amended Complaint (3AC). Defendants wish to strike several enumerated paragraphs within Plaintiffs' 3AC. They also seek reimbursement for litigation expenses incurred as a result of the Rule 11 violations. As described below, the Court GRANTS in part Defendants' motion.[1]

BACKGROUND

Descriptions of Plaintiffs' allegations can be found in the Court's Order Granting Motion to Dismiss Second Amended Complaint and Order on Motion to Dismiss Third Amended Complaint. The disputed allegations were part of Plaintiffs' Cartwright Act and fraud claims, which the Court dismissed with prejudice as the parties were briefing this motion.

---

[1] The Court also GRANTS Plaintiffs' motion for leave to file a surreply, which the Court considers (Docket No. 123).

LEGAL STANDARD

Federal Rule of Civil Procedure 11 permits a court to impose sanctions on an attorney when he or she has signed and submitted to the court a pleading that is not, to the attorney's knowledge, information and belief after reasonable inquiry, presented for a proper purpose, warranted by existing law or by a non-frivolous argument for altering the law, or supported or likely to be supported with evidence. Fed. R. Civ. P. 11. Awarding sanctions under Rule 11 "raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy." Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159-60 (9th Cir. 1987). An award of sanctions is "an extraordinary remedy, one to be exercised with extreme caution." Operating Eng'rs Pension Trust v. A-C Co., 859 F.2d 1336, 1345 (9th Cir. 1988). The moving party bears the burden to demonstrate why sanctions are justified. See Tom Growney Equip., Inc. v. Shelly Irrigation Dev., Inc., 834 F.2d 833, 837 (9th Cir. 1987).

Where a complaint is the primary focus of a Rule 11 motion, a court must determine that 1) the complaint is legally or factually baseless from an objective perspective and 2) the attorney has not conducted a reasonable and competent inquiry before signing and filing it. Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005); In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 434 (9th Cir. 1996). The standard is objective, examined at the time of signing. W. Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1526 (9th Cir. 1990). The existence of a non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions. Holgate, 425 F.3d at 677.

A claim is well grounded in fact if an independent examination reveals some credible evidence in support of a party's statements.  Himaka v. Buddhist Churches of Am., 917 F. Supp. 698, 710 (N.D. Cal. 1995).  A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11.  See United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1117-18 (9th Cir. 2001).  "The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded."  Holgate, 425 F.3d at 677.

## DISCUSSION

Defendants argue that four sets of allegations were baseless: that YouTube conspired to allow view count manipulation, that Defendants and their senior executives conspired to remove music videos by independent artists, that Defendants and their senior executives fail to combat view count gaming and how YouTube calculates view counts.

### I.    Alleged conspiracy to allow view count manipulation

Defendants take issue with paragraphs 19(a), 22-24, 30, 38, 44, 91, 92, 103, 109 and 110 of Plaintiffs' 3AC.  Together, these paragraphs alleged that Defendants and their named executives agreed to permit certain record labels to game the view count without enforcement.  First, Defendants argue that Plaintiffs have no evidentiary basis for this theory.  Plaintiffs respond that significant circumstantial evidence supported their theory.  For example, the 3AC described very high view counts for certain videos, and noted that Defendants would have benefitted from such

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

a conspiracy because they shared in advertising revenue.  The
Court concludes that it was baseless to allege that Defendants
conspired to game view counts--the circumstantial evidence does
not provide a basis for such an allegation.  These allegations
violate Rule 11.

Second, Defendants argue that, contrary to Plaintiffs'
allegations, YouTube has taken action against the alleged
conspirator record labels.  See 3AC ¶ 22 (alleging that "G-Y and
the G-Y Executives refrain from 4H TOS enforcement action against
the Major Labels and the other Conspiring Entities").  Publicly-
available information demonstrates that Plaintiffs' counsel could
not have undertaken an objectively reasonable inquiry before
presenting this allegation.  For example, Defendants submit an
online news article entitled: "YouTube cancels billions of music
industry video views after finding that they were fake or 'dead,'"
discussing a video by Rihanna, a Universal artist.  Haas Dec. Ex.
5.  Huffington Post published a similar story the following day.
Id. Ex. 6.  Paragraph 22 violates Rule 11.

Third, Defendants argue that Plaintiffs have insufficient
factual support for their allegations regarding Google and YouTube
executives' actions.  Plaintiffs make two arguments in response.
They argue that David Drummond's inaction following Plaintiffs'
counsel's May 12, 2014 letter to him outlining the sequence of
events giving rise to their legal claims could be construed as
evidence of his and others' prior awareness of the conspiracy.
See Docket No. 101-9.  The lack of response to this letter does
not serve as a basis for Plaintiffs' specific claims about
Defendants' executives' participation in and knowledge of a view

count gaming conspiracy.  Next, Plaintiffs argue that, if there were a conspiracy, it must have been at the direction of senior management.  However, as explained above, there was no basis to allege the view count gaming conspiracy.  For these reasons, the allegations pertaining to the actions and knowledge of particular Google and YouTube executives violate Rule 11.

II.  Allegations regarding removal of independent music videos

According to the 3AC, the alleged conspiracy was "designed to prevent the Independent Artists from competing fairly in the relevant market."  3AC ¶ 35.  In furtherance of the conspiracy, Defendants allegedly accused these artists of violating the terms of service, removed their videos and associated view counts and posted in their place a defamatory notice still at issue in this case.  Id. ¶¶ 23, 80.  Defendants argue that these allegations violate Rule 11.

Plaintiffs justify their allegations citing Darnaa v. Google, Inc., 2015 WL 7753406 (N.D. Cal.), and Bartholomew v. Youtube, LLC, No. 15-275833 (Cal. Super. Ct. 2015).  Joyce Bartholomew is a musician who creates and publishes original Christian ministry music, Docket No. 78-2, and Darnaa is the name of both an independent recording artist and the music label that promotes Darnaa's music, Darnaa, 2015 WL 7753406, at *1.  Like Plaintiffs here, the two cases allege libel claims based on the notice that replaced the artists' removed videos stating that they violated YouTube's terms of service.

Plaintiffs' allegations that other independent artists experienced a similar sequence of events are not baseless.  However, their allegations regarding the motivations and

machinations undergirding this repeated take-down sequence are objectively baseless.  Plaintiffs present no evidence to support that the events were conspiratorial.  Further, that treatment of independent artists stemmed from a conspiracy was not the only logical inference to make in light of <u>Darnaa</u> and <u>Bartholomew</u>; that Defendants were concerned about view count fraud is equally plausible.  <u>See</u> Haas Dec. ¶ 9.

For this reason, to the extent that paragraphs 35 and 80 of the 3AC connect actions taken against independent artists to a larger conspiracy, the allegations violate Rule 11.

III. Allegations regarding combatting view count gaming

Paragraph 36 of the 3AC stated that "G-Y, at the direction of G-Y Executives, and as part of the conspiracy, refuses to program any firewall, delay, or minimum time requirement into the View Count algorithm to prevent millisecond Fake Views from instantly showing up in published View Counts . . ."  Defendants explain that, contrary to the 3AC, YouTube works to counter view count gaming.  On a public page entitled "Frozen view count," YouTube explains that views are "algorithmically validated," which may require YouTube to "temporarily slow down, freeze, or adjust the view count, as well as discard low-quality playbacks."  Haas Dec. Ex. 3.  This website further explains: "During the first couple of hours after a video has been published, we'll only show views that our systems believe to be valid."  <u>Id.</u>

Plaintiffs counter that they did not allege that Defendants do nothing to counter view count gaming, but that Defendants refuse to incorporate a mechanism to prevent non-human views from instantly appearing in view counts.  This assertion contradicts

United States District Court
For the Northern District of California

the frozen view count webpage's statement that, after a video is
first posted, views must appear trustworthy before they are
included in the view count.  Because Plaintiffs provide no
evidence to support this allegation, and because Defendants have
shown that a reasonable investigation would have uncovered that
YouTube takes measures to counter view count fraud, paragraph 36
violates Rule 11.

IV.  Allegations regarding YouTube's view count calculation

The 3AC contained the following allegations:

Another primary role of G-Y and the G-Y Executives in the
conspiracy is to keep the way views are counted in the View
Count "top secret" and to never publish any guidelines or
standards as to how views are counted.  3AC ¶ 46.

Defendants' counsel has made representations in open Court
that "views" are counted every time any user watches a
particular video; i.e., if someone watches a video 5 times
for a meaningful duration, it is counted as 5 views.  This is
not the case.  Plaintiff Joe Brotherton has observed that the
first time he watches a video on YouTube, the View Count
increases by one, but there are no additional increases in
the View Count for his subsequent views of the same video.
Id. ¶ 47

Plaintiffs allege upon information and belief that views are
counted only one time per user in the YouTube View Count
prior to any Fake View enhancement.  Id. ¶ 49.

Defendants point to publicly-available explanations of how
views are counted.  For example, YouTube's Policy Center page
entitled "Increase YouTube views: Buying and getting YouTube views
through third-party services" explains that a legitimate view "is
an intended watch of a video where the primary purpose is to watch
the video; this means that a real human being wishes to see a
video, chooses which video to watch and then acts on that choice."
Haas Dec. ¶ 27 & Ex. 8.  Similarly, the Frozen view count page
described above includes a section entitled "How views are

counted" which explains that, when a video is first published, views may take awhile to appear because YouTube displays views it believes to be valid.  Id. Ex. 3.  However, afterwards the view count updates more frequently, and YouTube is "constantly validating views, so view count can always be adjusted."  Id. This information runs contrary to Plaintiffs' allegations in that YouTube publishes standards and general methods.  YouTube concedes that it does not make public all of the details of its view count methods.  However, making any such information public runs counter to the 3AC, which says that YouTube never publicizes any information as to how views are counted.  Thus, the allegations in paragraph 46 violate Rule 11.

However, the allegations that Defendants counted views on a user basis, rather than a view basis, are not objectively baseless.  Here, Plaintiffs present evidence, contrary to Defendants' public statements, that could serve as a basis for their allegations, namely Brotherton's observations.  See Brotherton Dec. ¶¶ 3, 5, 6.  Brotherton explains that he watched one video repeatedly on different occasions and saw the view count increase only once, on first time he watched the video.  Id.  A single experiment with undisclosed methodology is meager evidence at best.  Although Defendants provide evidence to the contrary and characterize Brotherton's observations as fraud prevention at work, this conflicting interpretation does not render Plaintiffs' allegations baseless or without reasonable investigation.

V.   Sanctions

A sanction imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others

United States District Court
For the Northern District of California

similarly situated." Fed. R. Civ. P. 11(c)(4).  This can include non-monetary directives or, "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees . . . directly resulting from the violation." Id.

The Court grants attorneys' fees to Defendants for their work on this sanctions motion.

VI.  Plaintiffs' Requests

In their opposition brief, Plaintiffs request expenses in opposing this motion under Rule 11(c)(2).  They argue that Defendants brought this motion to intimidate Plaintiffs.  However, Plaintiffs failed to satisfy the procedural requirements of Rule 11 and to carry their burden of proof that Defendants violated Rule 11.  In particular, they never argued that they followed Rule 11's safe harbor provision and they did not file this request for sanctions as a separate motion.  Therefore, the Court denies Plaintiffs' request.

Plaintiffs also request discovery on those who submitted declarations in support of Defendants' motion.  Rule 11's Advisory Notes state that discovery "should be conducted only by leave of the court, and then only in extraordinary circumstances."  Plaintiffs have cited no legal authority that would permit discovery.

CONCLUSION

The Court GRANTS in part Defendants' motion for sanctions under Rule 11 and GRANTS Plaintiffs' motion for leave to file a surreply.  The Court strikes paragraphs 19(a), 22-24, 30, 36, 38, 44, 91, 92, 103, 109 and 110, as well as paragraphs 35 and 80 to

the extent they link actions against independent artists to
conspiratorial motives and objectives.

The Court also awards attorneys' fees to Defendants for their
work bringing this motion.  Within ten days of the date of this
order, Defendants' counsel shall submit documentation supporting
hours spent and reasonable rates.

Based on the current record, Plaintiffs may not depose Susan
Wojcicki, YouTube's CEO, David Drummond, Google's Chief Legal
Officer, Larry Page, the CEO of Alphabet, Eric Schmidt, the
Executive Chairman of Alphabet, or Sergey Brin, the President of
Alphabet Inc.  Plaintiffs may not take any discovery relating only
to the antitrust or fraud claims.

IT IS SO ORDERED.


Dated: August 8, 2016

_____
CLAUDIA WILKEN
United States District Judge